**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MAGED SALEH MOHAMMED SHAIBI, | No. 15-16849 |
| *Plaintiff-Appellant*, | |
| | D.C. No. |
| | 1:14-cv-00948-SAB |
| v. | |
| | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ORDER AND AMENDED OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Eastern District of California
Stanley A. Boone, Magistrate Judge, Presiding

Argued and Submitted May 18, 2017
San Francisco, California

Filed August 22, 2017
Amended February 28, 2018

Before: Marsha S. Berzon and Mary H. Murguia, Circuit
Judges, and Jon P. McCalla, District Judge.[*]

Order;
Opinion by Judge Berzon

---

[*] The Honorable Jon P. McCalla, Senior United States District Judge
for the Western District of Tennessee, sitting by designation.

## SUMMARY[**]

### Social Security

The panel amended the opinion filed on August 22, 2017, and affirmed the denial of an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.

The panel held that the ALJ's residual functional capacity determination was supported by substantial evidence and was not inconsistent with the opinions of two physicians regarding claimant's capability for interaction with colleagues. The panel further held that a Social Security claimant who wishes to challenge the factual basis of a vocational expert's estimate of the number of available jobs in the regional and national economies must raise this challenge before administrative proceedings have concluded in order to preserve the challenge on appeal in federal district court. Because in this case, the claimant did not challenge the accuracy of the vocational expert's job numbers during the administrative proceedings, his claim was forfeited.

### COUNSEL

Lawrence D. Rohlfing (argued), Santa Fe Springs, California, for Plaintiff-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Daniel Paul Talbert (argued), Esther Kim, and Shea Lita Bond, Special Assistant United States Attorneys; Deborah Lee Stachel, Regional Chief Counsel, Region IX; Phillip A. Talbert, United States Attorney; Social Security Administration, San Francisco, California; for Defendant-Appellee.

## ORDER

The opinion filed on August 22, 2017, and published at 870 F.3d 874, is hereby amended.

The petition for panel rehearing and for rehearing en banc is **DENIED**. The full court has been advised of the suggestion for rehearing en banc, and no judge has requested a vote. Fed. R. App. P. 35. No further petitions for rehearing may be filed in this case.

## OPINION

BERZON, Circuit Judge:

Maged Saleh Shaibi appeals the denial of his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. In addition to contesting the Administrative Law Judge's ("ALJ") evaluation of medical opinions, a challenge we reject, Shaibi's case presents a familiar and recurring question: whether a Social Security claimant who wishes to challenge the factual basis of a vocational expert's estimate of the number of available jobs in the regional and national

economies must raise this challenge before administrative proceedings have concluded. We hold that such a claimant must, at a minimum, raise the issue of the accuracy of the expert's estimates at some point during administrative proceedings to preserve the challenge on appeal in federal district court.

## I. Background

Shaibi suffers from a litany of physical and psychological impairments, including lumbosacral degenerative disc disease, depressive disorder, anxiety disorder, diabetes, obesity, and osteoarthritis. He is limited in his ability to perform the following tasks: sitting or standing for extended periods of time; walking long distances without the use of a cane; and carrying objects weighing ten pounds or more.

Until 2010, Shaibi worked as a cashier. Shaibi applied for disability benefits in May of 2011, claiming that he was no longer able to work because of depression, pain, insomnia, anxiety, high cholesterol, and high blood pressure. His application was denied in September of 2011. Shaibi then requested a hearing before an ALJ. Shaibi's hearing took place on January 23, 2013.

At the hearing, the ALJ heard testimony from Shaibi as well as from a vocational expert ("VE"). After the VE testified that Shaibi could no longer continue his previous work as a cashier, the ALJ asked the VE whether any jobs were available in significant numbers in the regional and national economies for a hypothetical claimant with Shaibi's limitations – one who could lift and carry up to ten pounds, stand or walk for up to four hours (with use of a cane for walking extended distances), sit without limitation, and

perform "simple routine tasks in a non-public setting with occasional interaction with coworkers." The VE responded that such a claimant could perform sedentary, unskilled work, and cited three representative occupations: "leaf tier," "unskilled ampoule sealer," and "unskilled weight tester, paper."[1]

The VE also testified that those three occupations existed in significant numbers in the regional and national economies. He stated that the "leaf tier" position represented 5,236 jobs in California and 48,438 nationwide; that the occupation of "ampoule sealer" represented 3,087 jobs in California and 22,259 nationwide; and that the occupation of "unskilled weight-tester, paper" represented 1,539 jobs in California and 13,496 nationwide.

Shaibi's attorney stipulated to the VE's qualifications as an expert. Although he cross-examined the VE briefly, he did not suggest that the VE's job estimates were inaccurate, nor did he inquire as to the evidentiary basis for those job numbers. The ALJ inquired whether the VE's testimony was consistent with the DOT; the VE answered that it was.

In addition to the testimony adduced at the hearing, the ALJ considered the administrative record, including the medical records and opinions of several physicians. With respect to Shaibi's mental and social impairments, the ALJ

---

[1] The VE cited corresponding title codes in the Dictionary of Operational Titles ("DOT") for each occupation. For the "leaf tier" occupation, the VE cited code number 529.687-138, corresponding to the title of "Leaf Tier - Tobacco." For the occupation of "ampoule sealer," the VE cited code number 559.687-014. For the occupation of "unskilled weight tester-paper," the VE cited code number 539.485-010, corresponding to the title of "Weight Tester (paper and pulp)."

focused primarily on the opinions of two physicians, Dr. Roger Izzi and Dr. Laura Lochner.

Dr. Izzi examined Shaibi and performed a consultative psychiatric evaluation on July 23, 2011, after Shaibi had filed for disability benefits. Dr. Izzi diagnosed Shaibi with depressive disorder and post-traumatic stress disorder. He gave Shaibi a score of 68 on the Global Assessment of Functioning ("GAF") test. According to the Diagnostic and Statistical Manual of Mental Disorders IV, a GAF score of 68 reflects that the patient has "[s]ome mild symptoms . . . or some difficulty in social, occupational or school functioning . . . but [is] generally functioning pretty well, has some meaningful interpersonal relationships." Dr. Izzi noted that Shaibi could perform simple, repetitive tasks in the workplace, but would be "moderately limited" in terms of his ability to get along with peers and supervisors because of a mood disorder. Nevertheless, Dr. Izzi concluded that Shaibi appeared capable of "responding to usual work session situations regarding attendance and safety issues" and "dealing with changes in a routine work setting."

Dr. Lochner did not examine Shaibi, but she did conduct a Mental Residual Functional Capacity ("MRFC") Assessment based on the medical evidence in Shaibi's file. In Section 1 of the MRFC, Dr. Lochner completed a "Summary Conclusions" worksheet, in which she indicated that Shaibi was "not significantly limited" with respect to many mental activities, including his ability to carry out very short and simple instructions; to work in coordination with or proximity to others; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral

extremes; and to maintain socially appropriate behavior and basic standards of cleanliness. With respect to social interaction, Dr. Lochner concluded that Shaibi was "moderately limited" in terms of his ability to interact with the general public, but was not so limited with respect to his interactions with coworkers. Dr. Lochner found that Shaibi's difficulties in maintaining social functioning were "mild" overall. She noted that Shaibi could relate to others on a "superficial work basis" and could "adapt to a work situation." Dr. Lochner also opined that Shaibi could perform "semi-skilled" work and was not limited to "simple, repetitive tasks."

In determining Shaibi's residual functional capacity, the ALJ gave "significant weight" to the opinions of Dr. Izzi and Dr. Lochner, and concluded that Shaibi had "some mental difficulty, and that it is affected by the pain his physical condition causes." The ALJ concluded that the only meaningful difference between the opinions of Dr. Izzi and Dr. Lochner concerned whether Shaibi was capable of performing semi-skilled work. The ALJ accepted the opinion of Dr. Izzi in that regard and found that Shaibi was limited to the performance of "simple, routine tasks in a non-public setting, with occasional interaction with coworkers." The ALJ also credited the VE's testimony that Shaibi could perform the three representative jobs of "leaf tier," "ampoule sealer," and "weight tester," and therefore concluded that Shaibi was capable of successfully adjusting to other work that existed in significant numbers in the national economy. Based on these findings, the ALJ held that Shaibi was not entitled to disability benefits.

Shaibi appealed to the Social Security Appeals Council, which affirmed the ALJ's decision. He subsequently

appealed to the United States District Court for the Eastern District of California, alleging two errors by the agency.

First, Shaibi argued that the ALJ's residual functional capacity determination, with respect to Shaibi's ability to interact with coworkers, was not supported by substantial evidence. Second, Shaibi alleged for the first time that the ALJ erred in crediting the VE's testimony regarding the number of existing jobs in the national economy for the three representative occupations the VE cited at the hearing, because the VE's job estimates were allegedly contradicted by the County Business Patterns ("CBP") published by the U.S. Census Bureau, and by the Occupational Outlook Handbook ("OOH") published by the Bureau of Labor Statistics, as well as by common sense.[2] Shaibi also proposed that the ALJ erred in accepting the VE's testimony with regard to Shaibi's fitness to work as a "weight tester, paper" because the required reasoning level listed in the DOT exceeded Shaibi's residual functional capacity.

The district court affirmed the denial of benefits. Shaibi timely appealed.

---

[2] Shaibi observes, for example, that common sense suggests that only a handful of "leaf tier" jobs, at most, exist in California, as according to the DOT, the "leaf tier" position exists only within the tobacco industry, and that industry has a small footprint in California. *See* DICOT 529.687-138 (G.P.O.), 1991 WL 674769 (leaf tier "[t]ies tobacco leaves in hands (bundles) to facilitate processing: Selects loose leaves for hand and arranges leaves with butt ends together. Winds tie leaf around butts and pulls end of tie leaf into hand.").

## II. Standard of Review

This court reviews de novo a district court's judgment upholding the denial of Social Security benefits. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). This court will reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1121 (internal quotation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

When considering a claim for disability benefits, the Social Security Administration is required to conduct a now-familiar five-step sequential evaluation process to determine whether a claimant is disabled and eligible for benefits. *See* 20 C.F.R. § 404.1520(a). First, the agency must consider the claimant's current work activity. Second, the agency must consider the medical severity of the claimant's impairments. Third, the agency must determine whether the severity of those impairments is sufficient to meet, or medically equal, the criteria of an impairment listed in three of the Social Security Act's implementing regulations, published at 20 C.F.R. §§ 404.1520(d), 404.1525-26. Fourth, the agency determines whether the claimant can perform past relevant work in light of the claimant's residual functional capacity. Fifth, the agency assesses whether the claimant can make an adjustment to other work that exists in significant numbers in

the national economy, based on the claimant's residual functional capacity.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). Shaibi alleges that, between the third and fourth steps of the sequential evaluation process, the ALJ erred in assessing his residual functional capacity by ignoring or discounting the opinions of Dr. Izzi and Dr. Lochner. Shaibi further alleges that, at the fifth step of the process, the ALJ improperly credited the job numbers the VE proffered. We address these arguments in turn.

**A. The ALJ's Residual Functional Capacity Determination Was Supported By Substantial Evidence.**

Shaibi first protests that the ALJ's residual functional capacity determination "omitted" or "rejected" the limitations Dr. Izzi and Dr. Lochner identified. Essentially, the argument is that the ALJ mistakenly evaluated the opinions of the two physicians by gleaning from the "qualitative" limitations the two doctors identified – that Shaibi would be "moderately limit[ed]" in his interactions with coworkers, and that he could "relate to others on a superficial work basis" – a

"quantitative" limitation, that Shaibi was capable of "occasional" interaction with coworkers.**[3]**

We find no obvious inconsistency between the two physicians' opinions regarding Shaibi's capability for interaction with colleagues and the ALJ's residual functional capacity determination. Ultimately, the ALJ found that Shaibi was "limited to simple routine tasks in a non-public setting, with occasional interaction with coworkers." The ALJ evidently contemplated that Shaibi's social limitations were significant enough that he was incapable of frequent or sustained interactions with coworkers, but not sufficiently debilitating that Shaibi could *never* interact with colleagues or supervisors. That conclusion is consistent with Dr. Izzi's opinion that Shaibi's social limitations were "moderate," rather than mild or marked.

With regard to Dr. Lochner's opinion, Shaibi argues that the ALJ ignored her conclusion that he was limited to "superficial contact" with coworkers. Shaibi misstates Dr. Lochner's opinion; in fact, she wrote that Shaibi could "*relate to others* on a superficial work basis" (emphasis added). The ALJ could reasonably have concluded that, given Shaibi's ability to "relate to others on a superficial work basis," he could perform essential workplace functions, even if he could not easily develop deeper emotional bonds with his coworkers.

---

**[3]** Contrary to Shaibi's representation that the ALJ ignored the opinions of Dr. Izzi and Dr. Lochner, the ALJ's decision gave "significant weight" to both opinions. The ALJ cited with approval specific language in both opinions – Dr. Izzi's opinion that Shaibi's mood disorder "moderately limits" Shaibi's ability to get along with peers or supervisors, and Dr. Lochner's opinion that Shaibi could relate to others "on a superficial work basis."

Such a conclusion is all the more reasonable in light of the "Summary Conclusions" worksheet that Dr. Lochner submitted along with her written comments. On that worksheet, she indicated that Shaibi was "not significantly limited" in terms of his ability to work in coordination with or proximity to others; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to maintain socially appropriate behavior and basic standards of cleanliness. Viewed in the context of her specific conclusions on that worksheet, Dr. Lochner's statement that Shaibi could "relate to others on a superficial work basis" simply confirms that she believed Shaibi could communicate with coworkers and supervisors as necessary.

Shaibi's briefing also makes much of the Social Security Administration's policy guidance documents in its Program Operations Manual System ("POMS"). Shaibi asserts that the POMS guidance lists fourteen mental or social functions essential for unskilled work, and that the ALJ ignored Dr. Izzi's opinion that Shaibi was moderately limited with respect to each of these critical requirements.

POMS guidance is not binding either on the ALJ or on a reviewing court. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). Moreover, contrary to Shaibi's representation, Dr. Izzi did not make specific findings with respect to any of the fourteen mental abilities Shaibi cites in his briefing. Dr. Lochner, however, *did* address each of the mental capacities that Shaibi proposes are essential for unskilled work, and indicated that Shaibi was not significantly limited with respect to any of them.

At bottom, Shaibi argues that the ALJ *could* have come to a different conclusion in weighing the opinions of Dr. Izzi and Dr. Lochner, had the ALJ interpreted the words "moderate" and "substantial" differently.  But we are to affirm the ALJ's findings of fact if they are supported by substantial evidence and if the ALJ's decision was free of legal error.  42 U.S.C. § 405(g); *see also Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679.  As we cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence.

## B. Shaibi Forfeited His Challenge To The VE's Job Numbers.

We turn next to whether the ALJ improperly relied on the VE's job numbers when he found that Shaibi could perform work that existed in significant numbers in the national economy.

At step five of the sequential evaluation process, an ALJ must determine whether a disability claimant who cannot perform past relevant work is nevertheless capable of performing other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a).  Here, the ALJ presented to the VE the case of a hypothetical claimant with limitations matching Shaibi's. The VE responded that such an applicant could perform three relevant jobs: "leaf tier," "unskilled ampoule sealer" and "unskilled weight-tester, paper."  The VE also testified that 5,236 "leaf tier" jobs existed in California and 48,438 existed nationwide, and that the "ampoule sealer" occupation represented 3,087 jobs

in California and 22,259 nationwide.[4]  *Id*.  The VE did not
testify as to the evidentiary basis for his estimates.  Nor did
Shaibi or his attorney cross-examine the VE as to the
accuracy of those estimates, or challenge that accuracy before
the Appeals Council.

On appeal in federal district court, Shaibi argued for the
first time that the VE's job estimates "deviated from listed
sources of administrative notice."  Shaibi cites the CBP and
the OOH, both of which are listed, along with the DOT, as
sources of which the Social Security Administration will take
administrative notice.  20 C.F.R. § 404.1566(d).  He proposes
that the ALJ should have taken administrative notice of the
CBP and OOH *sua sponte*; compared the VE's job numbers
against the economic data in the CBP and the OOH;
concluded that the VE's job numbers could not have been
accurate; and consequently rejected the VE's numbers as not
supported by substantial evidence.  Shaibi provides no
explanation, however, for his failure to raise the issue during
administrative proceedings.

Questions regarding the reliability of a vocational expert's
job numbers, or the evidentiary basis for those numbers, are
familiar and recurring in our circuit and in our sister circuits.
*See, e.g.*, *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016);
*see also Wright v. Berryhill*, No. 15-55282, 2017 WL
2645298, at *1 (9th Cir. June 20, 2017);  *Anders v. Berryhill*,
No. 15-4181, 2017 WL 2179109, at *5 (10th Cir. Apr. 18,
2017);  *Lemauga v. Berryhill*, No. 15-56611, 2017 WL

---

[4] Shaibi also challenges the ALJ's finding that he could perform the
work of a "weight-tester, paper."  As discussed below, although Shaibi's
argument is meritorious in this respect, we conclude that any such error
was harmless.

1208664, at \*1 (9th Cir. Apr. 3, 2017); *Welsh v. Comm'r Soc. Sec.*, 662 F. App'x 105, 109 (3d Cir. 2016); *Guiton v. Colvin*, 546 F. App'x 137, 141–43 (4th Cir. 2013). To this point, however, we have issued no precedential opinion concerning *when* a Social Security claimant must, absent a showing of good cause, challenge the evidentiary basis of a vocational expert's job numbers to preserve the issue for litigation in the district court. We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.[5] Specifically, our holding encompasses challenges based on an alleged conflict with alternative job numbers gleaned from the CBP or the OOH.

Several previous decisions compel our holding today, particularly *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), *as amended* (June 22, 1999). *Meanel* held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id*. at 1115. We so held in light of the fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court. "The ALJ, rather than this Court, was in the optimal position to resolve the conflict between Meanel's new evidence and the statistical evidence provided by the VE." *Id*. That principle applies here with force.

---

[5] Shaibi has not shown good cause, or suggested any reason at all, for his failure to challenge the job numbers during administrative proceedings.

Shaibi contends that *Meanel* was overruled by the Supreme Court's subsequent holding that "[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims v. Apfel*, 530 U.S. 103, 112 (2000). *Sims* does not control this case. *Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the Court specifically noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id*. at 107. Here, Shaibi did not present the job-numbers issue before the ALJ *or* the Appeals Council. In light of the Court's express limitation on its holding in *Sims*, we cannot say that that holding is "clearly irreconcilable" with our decision in *Meanel*, and *Meanel* therefore remains binding on this court with respect to proceedings before an ALJ. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Our holding is consistent with the plain language of the Social Security Act. The Act states that a reviewing court presented with new evidence may remand to the agency for consideration of that evidence, but only upon a showing of "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Not only has Shaibi failed to demonstrate good cause, he has provided no explanation at all for his failure to challenge the VE's job numbers during administrative proceedings.

Moreover, we can find no case, regulation, or statute suggesting that an ALJ must *sua sponte* take administrative notice of economic data in the CBP or the OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT,

regardless of whether a claimant raises the conflict before the agency.  *See* SSR 00-4P; *see also Lamear v. Berryhill*, 865 F.3d 1201, 1206–07 (9th Cir. 2017); *Massachi v. Astrue*, 486 F.3d 1149, 1152–54 (9th Cir. 2007).  But Shaibi cites to no authority suggesting that the same is true for the CBP and OOH.[6]  Our precedent holds, instead, that an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire *sua sponte* into the foundation for the expert's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Johnson v. Shalala*, 60 F.3d 1428, 1435–36 (9th Cir. 1995).

We recognize that a claimant will rarely, if ever, be in a position to anticipate the particular occupations a VE might list and the corresponding job numbers to which a VE might testify at a hearing.  We do not suggest that a claimant must, within minutes of a VE's initial testimony, cross-examine a VE with specific alternative job calculations based on the CBP, OOH, or other published sources.  It is enough to raise the job-numbers issue in a general sense before the ALJ.  A claimant may do so by inquiring as to the evidentiary basis for a VE's estimated job numbers, or inquiring as to whether those numbers are consistent with the CBP, OOH, or other

---

[6] The DOT, CBP, and OOH are all listed in 20 C.F.R. § 404.1566(d) as data sources of which the Social Security Administration "will take administrative notice."  It does not follow that an ALJ must in every case reconcile conflicts *sua sponte* between each of those data sources and the VE's testimony.  That requirement was established in SSR 00-4p, a Social Security Ruling, only for the DOT and an associated document.  And unlike the DOT, which is comprised of self-contained descriptions of the requirements for performance of various jobs, using the job distribution information in the CBP and OOH requires information and inferences not contained in the documents themselves and so not amenable to an ALJ's *sua sponte* consideration.

sources listed in 20 C.F.R. § 404.1566(d). If that is done, an ALJ, on request, ordinarily would permit the claimant to submit supplemental briefing or interrogatories contrasting the VE's specific job estimates with estimates of the claimant's own. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 451 (2d Cir. 2012). If the ALJ declines to do so, a claimant may raise new evidence casting doubt on a VE's job estimates before the Appeals Council, provided that evidence is both relevant and "relates to the period on or before the ALJ's decision." *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012).

Here, however, although the ALJ was in the best position to evaluate and resolve any conflicting evidence concerning the number of jobs in relevant occupations, Shaibi did not even obliquely suggest that the VE's job estimates might be unreliable at any point during administrative proceedings. His claim is therefore forfeited.[7]

---

[7] Shaibi also proposes that the ALJ erred in concluding that Shaibi could perform the work of an "unskilled weight tester – paper." Shaibi correctly observes that although the DOT requires a reasoning level of 3 for such a position, the ALJ found that Shaibi was limited to performing "simple, repetitive tasks." We have held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," and that an ALJ must recognize and resolve such a conflict during administrative proceedings. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). Any error in this regard was, however, ultimately harmless, as the ALJ also found that the "leaf tier" occupation represented 5,236 jobs in California and 48,438 nationwide, and that the "ampoule sealer" occupation represented 3,087 jobs in California and 22,259 nationwide. We have held that 2,500 jobs in California, or 25,000 nationwide, constitute a significant amount of work in the regional and national economies. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527–29 (9th Cir. 2014).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Shaibi's appeal.