Robert T. Numbers, II, United States Magistrate Judge
Plaintiff Sharon Bradshaw asks the court to vacate the decision denying her claim for disability benefits because the appointment of the Administrative Law Judge who issued the decision violated the Constitution's Appointments Clause. Acting Commissioner of Social Security Nancy Berryhill does not take much issue with Bradshaw's conclusion about the validity of the ALJ's appointment but claims that Bradshaw waived this argument by not raising it before the ALJ.
This controversy arises from the Supreme Court's decision in Lucia v. Securities and Exchange Commission , --- U.S. ----, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018). In Lucia , the Supreme Court determined that the SEC's ALJs were officers of the United States instead of merely employees of the federal government. Id. at 2054. As a result, the Constitution required that the President, a court of law, or a head of a department appoint them to their position. Id. at 2050 (citing U.S. Const. Art. II, § 2, cl. 2.). Because the SEC had not appointed the ALJ who ruled against Lucia as required by the Appointments Clause, the Supreme Court held that he was entitled to a new hearing before a properly appointed official. Id. at 2055.
Particularly relevant to this dispute is the Supreme Court's statement that Lucia was entitled to a new hearing because he made "a timely challenge" to the constitutionality of the ALJ's appointment. Id. at 2055. The Court explained that Lucia "contested the validity of [the ALJ's] appointment before the Commission, and continued to press that claim in the Court of Appeals and this Court." Id. at 2056.
The Acting Commissioner claims that Bradshaw did not make a timely challenge because she did not raise the Appointments Clause issue before the ALJ. But neither the statutes nor the regulations that govern Social Security proceedings required Bradshaw to do so. And the court will not impose an issue-exhaustion requirement because both precedent and constitutional concerns counsel against it. Thus, Bradshaw's Appointments Clause challenge is timely and the court will address it.
After considering the merits of this matter, the court concludes that the appointment of the ALJ who issued the decision below did not comply with the Appointments Clause. The ALJ was an inferior officer of the United States and she was not appointed by the President, a court of law, or the head of a department. Thus, *352 the court vacates the decision below and remands the matter to the SSA for proceedings before a validly appointed ALJ.
I. Background
In December 2013, Bradshaw filed a claim for disability insurance benefits with the Social Security Administration. Admin. Tr. at 16, D.E. 10. After the SSA denied her initial claim and her request for reconsideration, Bradshaw filed a written request for a hearing before an ALJ. Id. at 99-102, 104-07, 108. In her request, the only reason provided for her appeal was that she was disabled and could not work. Id. at 108.
At that time, representatives of both the Office of Personnel Management and the Social Security Administration evaluated applicants who wished to become ALJs. Gehlken Dec. ¶¶ 3-10, D.E. 28-1. Ultimately, the Social Security Administration's Director for the Center for Personnel Policy and Staffing was responsible for appointing ALJs. Id. ¶ 11.
In early December 2015, an ALJ held a hearing to review Bradshaw's claim. Admin. Tr. at 38. Ultimately, the ALJ decided in March 2017 that Bradshaw was not disabled. Id. at 16-32. Bradshaw then unsuccessfully sought review before the Appeals Counsel. Id. at 1-3.
Bradshaw filed a civil action in March 2018 seeking review of the ALJ's decision. Compl. passim , D.E. 5. Both parties moved for a judgment on the pleadings in their favor. D.E. 15, 18. As part of her motion, Bradshaw urged the court to vacate the decision because the ALJ's appointment did not comply with the Appointments Clause. Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings at 23-26, D.E. 16. In response, the Government claimed that Bradshaw waived this issue by not raising it before the ALJ. Def's Resp. to Pl.'s Mot. at 12-21, D.E. 19. The court[1] held a hearing on the Appointments Clause issue in December 2018.
II. Analysis
As noted at the outset, this case presents two issues. The court must first address whether Bradshaw's Appointments Clause challenge is timely. If it is, then the court must turn to whether the SSA violated the Appointments Clause when it appointed the ALJ who issued the ruling under review here. Bradshaw prevails on the timeliness issue because there is no requirement that claimants raise constitutional issues before an ALJ to preserve them for federal court review. And she also prevails on the merits of her claim because the ALJ was an inferior officer who was not appointed by the President, a court of law, or the head of a department. Thus, the court will remand this matter for further proceedings before a validly appointed ALJ.
a. Was Bradshaw required to raise the Appointments Clause issue to the ALJ?
The Government relies heavily on the statement in Lucia that " 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." 138 S.Ct. at 2055. (quoting Ryder v. United States , 515 U.S. 177, 182-83, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995) ). While this language makes clear that a timely challenge is a prerequisite to the relief Bradshaw seeks, it provides no guidance-no matter how many times the Acting *353 Commissioner invokes it-about what constitutes a timely challenge in the Social Security context.
But the Supreme Court's decision in Sims v. Apfel does. Sims considered "whether a Social Security claimant waives judicial review of an issue if he fails to exhaust that issue by presenting it to the Appeals Council in his request for review." 530 U.S. 103, 106, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Although Sims dealt with issue exhaustion at the Appeals Counsel level, it provides a roadmap for the court's analysis of whether issue exhaustion is required at the ALJ level.
The Supreme Court began by noting that a claimant may only seek review in federal court of a final decision of the Commissioner of Social Security. Id. at 106, 120 S.Ct. 2080 (citing 42 U.S.C. § 405(g) ). To properly obtain a final decision, the Court explained, the claimant must ask for review of an ALJ's decision from the Appeals Counsel. Id. at 106-07, 120 S.Ct. 2080. If a claimant does not seek Appeals Counsel review, there is no final decision and thus no right to "judicial review because he has failed to exhaust administrative remedies." Id.
Sims sought review from the Appeals Counsel, and had thus exhausted her administrative remedies. Id. at 107, 120 S.Ct. 2080. But when she sued in the district court, she relied on an argument that she had not presented to the Appeals Counsel. Id. at 106, 120 S.Ct. 2080. So what happens when a claimant obtains a final decision from the Commissioner and then raises an issue before a federal court they did not raise to the Appeals Counsel? In other words, does the Social Security Act's administrative exhaustion requirement also require issue exhaustion at the Appeals Counsel level?
In answering this question, the Supreme Court noted that "requirements of administrative issue exhaustion are largely creatures of statute." Id. at 107, 120 S.Ct. 2080. And "it is common for an agency's regulations to require issue exhaustion in administrative appeals." Id. at 108, 120 S.Ct. 2080. But, the Supreme Court explained, neither a statute nor "SSA regulations ... require issue exhaustion." Id.
Even without a statute or regulation requiring issue exhaustion, a court can still impose one based on the analogous provision "that appellate courts will not consider arguments not raised before trial courts." Id. at 108-09, 120 S.Ct. 2080. But whether it is desirable to do so "depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." Id. at 109, 120 S.Ct. 2080. If "an administrative proceeding is not adversarial ... the reasons for a court to require issue exhaustion are much weaker." Id. at 110, 120 S.Ct. 2080. In considering whether to apply an issue-exhaustion requirement, courts should caution against "reflexively 'assimilat[ing] the relation of ... administrative bodies and the courts to the relationship between lower and upper courts.' " Id. (quoting FCC v. Pottsville Broad. Co. , 309 U.S. 134, 144, 60 S.Ct. 437, 84 L.Ed. 656 (1940) ).
After setting out these principles, a majority of the Court determined that there was no issue-exhaustion requirement at the Appeals Counsel level. But there majority was divided about the reason behind this outcome.
A four-justice plurality began by noting that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings." Id. at 110, 120 S.Ct. 2080. In fact, "the SSA is '[p]erhaps the best example of an agency' that is not" based on "the judicial model of decisionmaking[.]" Id.
*354 There were factors that, according to the plurality, showed Social Security proceedings were "inquisitorial rather than adversarial." Id. To begin with, the SSA's regulations provide that the process was to proceed " 'in an informal, nonadversary manner.' " Id. (quoting 20 C.F.R. § 404.976(a) ). But beyond that, there were other indicia that Social Security proceedings are nonadversarial. For example:
• ALS must investigate facts and develop arguments before and against the claimant. Id.
• The Commissioner does not appear before ALJs and does not oppose claimants. Id.
• The Appeals Council does not require briefing. Id.
• The Appeals Council's review is plenary. Id.
• The Appeals Council must review the entire record and new factual evidence when determining whether to review an ALJ's opinion. Id.
• The Agency informs Claimants that the Counsel will consider the entirety of an ALJ's decision, even if the claimant agrees with the decision or does not request review. Id.
• The paperwork used to begin a review by the appeals counsel was short and "strongly suggests that the Council does not depend much, if at all, on claimants to identify issues for review." Id. at 112, 120 S.Ct. 2080.
Considering these factors, the plurality determined that "[t]he adversarial development of issues by the parties" at the core of the analogy between administrative and judicial proceedings "simply does not exist" in Social Security proceedings. Id. at 112, 120 S.Ct. 2080. The "responsibility for identifying and developing the issues" rested mainly with "[t]he Council, not the claimant." Thus, it made "little sense" to impose a judicially crated issue-exhaustion requirement.
Justice O'Connor, writing for herself, concurred with the judgment, but did so on different grounds. In her view, it was inappropriate to require issue exhaustion because the agency did not notify claimants that they needed to raise particular issues to preserve them for review by the district court. Id. at 113, 120 S.Ct. 2080 (O'Connor, J. concurring in part and concurring in judgment). In fact, "the relevant regulations and procedures indicate that issue exhaustion before the Appeals Council is not required." Id. (emphasis in original). Justice O'Connor also focused on the brief form used to request review by the Appeals Council, the plenary nature of the Council's review, and its ability to review the entire record even if the claimant did not seek review of a particular aspect of the ALJ's decision. Id. at 113-14, 120 S.Ct. 2080. Based on these factors, Justice O'Connor found that the claimant "did everything that the agency asked of her" and did not believe it appropriate to impose additional requirements, such as an issue-exhaustion requirement, on her. Id. at 113, 120 S.Ct. 2080.
Sims definitively resolved whether Social Security claimants must raise issues to the Appeals Council before bringing them to federal court. But the Court explicitly noted that it was not addressing whether parties needed to raise issues before the ALJ to preserve them for later review by a district court. Id. at 107, 120 S.Ct. 2080. That is the question, in the context of constitutional challenges, that presents itself to this court for resolution.
i. Is there an issue-exhaustion requirement for constitutional questions at the ALJ level?
Based on Sims , the court will consider whether there is a statute or regulation *355 that requires claimants to raise constitutional questions before an ALJ to preserve them for review in a federal court. If not, the court will turn to whether the nature of the proceedings before the ALJ justifies judicially imposing one.
The Acting Commissioner conceded at oral argument that there is no explicit issue-exhaustion requirement in the SSA's organic statute or its regulations. Hr. Tr. at 20:21-24, D.E. 27. Instead, she relies on the overall content of its regulations to support her position. Id. at 23-24. Alternatively, the Acting Commissioner argues that efficiency considerations justify the court imposing an issue-exhaustion requirement at the ALJ level. Resp. to Pl.'s Mot. for J. on the Pleadings at 20. The court will consider each argument in turn.
1. Is there a statute or regulation that requires claimants to raise constitutional questions before Social Security ALJs?
Given the Supreme Court's reasoning in Sims , this court's assessment of the timeliness of Bradshaw's Appointments Clause challenge begins with a review of the applicable statutes and regulations.[2] The court can resolve the statutory question easily enough because the Acting Commissioner concedes that no statute imposes an issue-exhaustion requirement on Social Security claimants. Hr. Tr. at 20:21-22 ("No, Your Honor. We do not have a statute to that effect[.]").
But the court's examination of the SSA's regulations is more complicated. To begin with, the court notes that in Sims , the Supreme Court found that "SSA regulations do not require issue exhaustion." 530 U.S. at 108, 120 S.Ct. 2080. Despite this statement (or perhaps because Sims dealt with matters before the Appeals Counsel), the Acting Commissioner claims that several "regulations require a claimant to raise all issues-including constitutional issues-to the agency at the earliest possible juncture." Resp. to Pl.'s Mot. for J. on the Pleadings at 16, D.E. 19.
Yet at the hearing on this matter, the Acting Commissioner conceded that no regulation explicitly required Bradshaw to raise the Appointments Clause issue with the ALJ. Hr. Tr. at 26:21-24 ("[O]ur argument is not, per se, that there is a specific regulation that says you, claimant, must raise an appointment challenge ... with the ALJ."), 27:6-12 ("I don't know that there's a regulation directly on point, Your Honor."). Instead, the Acting Commissioner maintained that the language of the Administration's regulations are "consistent with the theory that such a challenge should be brought to the ALJ's attention." Id. at 26:24-25. Thus, the court must consider what type of regulatory language courts have determined establish an issue-exhaustion-requirement and whether the court can find similar language in the SSA's regulations.
In Sims , the Supreme Court noted that "it is common for an agency's regulations to require issue exhaustion in administrative appeals." 530 U.S. at 108, 120 S.Ct. 2080. As an example, it cited a Department *356 of Labor regulation that provided that "the petitioner shall submit a petition for review to the Board which ... lists the specific issues to be considered on appeal." Id. (citing 20 C.F.R. § 802.211(a) (1999) ). Other courts considering this issue have found that a regulation requiring a party to identify the specific issues it wishes to raise on appeal creates an issue-exhaustion requirement. See Scott v. McDonald , 789 F.3d 1375, 1378-79 (Fed. Cir. 2015) (applying an issue-exhaustion requirement when regulations required an appealing party to state "that all issues in the statement of the case are being appealed or by specifically identifying the issue being appealed" (citing 38 C.F.R. § 20.202 ) ); Environmentel, LLC v. FCC , 661 F.3d 80, 84 (D.C. Cir. 2011) (finding that FCC regulations required issue exhaustion because they required a party to "concisely and plainly state the questions presented for review" (citing 47 C.F.R. § 1.115(b)(1) ) ).
But on the other hand, if regulations do not require a party to specifically identify issues for appeal, courts have been reluctant to find an issue-exhaustion requirement. For example, in Mahon v. United States Department of Agriculture , 485 F.3d 1247 (11th Cir. 2007), the Eleventh Circuit found that regulations adopted by the Department of Agriculture's National Appeals Division did not require issue exhaustion. Although the court noted that "the regulations require the claimants to state the reasons why the adverse decision was incorrect[,]" this language did not create an issue-exhaustion requirement because "there is no express requirement in the regulations that a party must list the specific issues the reviewing court will consider." Id. at 1255-56.
With these cases in mind, the court will turn to its consideration of the regulations relied on by the Acting Commissioner to support her position.
The SSA's regulations explain the process that a claimant must go through to obtain review by an ALJ and the process for reviewing a denied claim. To begin with, the SSA's regulations limit the scope of the issues a claimant may raise before the ALJ. They explain that a party may only request a hearing before an ALJ if they are "dissatisfied with one of the determinations or decisions listed in § 404.930." 20 C.F.R. § 404.929. The matters listed in § 404.930 focus on initial, revised, and reconsidered decisions made by the Administration, and do not mention constitutional issues.
The regulations also set out a limited scope of review for ALJs. They explain that "[t]he issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in your favor." 20 C.F.R. § 404.946(a). The ALJ may also consider the basis for a fully-favorable decision if the evidence requires it. Id. But there is no indication in the regulation that the claimant must present constitutional issues to the ALJ.
The regulations then specify the scope of the argument a claimant should raise before the ALJ. The claimant must submit a written request which "should include" several items, including "[t]he reasons you disagree with the previous determination or decision." 20 C.F.R. § 404.933(a) & (a)(2). Given that an ALJ's appointment has no connection to initial determination or a reconsideration of a claim for benefits, this language does not require claimants to raise a constitutional challenge to the ALJ's appointment at the ALJ level.
Furthermore, an examination of the form the SSA developed to help claimants request review by an ALJ reinforces this conclusion about scope of issues a claimant may raise on appeal to the ALJ. The form *357 provides three lines for the claimant to explain why they "disagree with the determination" below. See Form HA-501, https://www.ssa.gov/forms/ha-501.pdf. The agency estimates "that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions" included on the form. Id. The Supreme Court noted in Sims that identical language on the Appeals Counsel form "strongly suggest[ed] that the Council does not depend much, if at all, on claimants to identify issues for review." Sims , 530 U.S. at 112, 120 S.Ct. 2080. Thus, this form bolsters Bradshaw's position that there is no-issue exhaustion requirement for constitutional issues.
Other regulations also show the minimal role that claimants have in setting the issues for an ALJ's review. The regulations explain that the SSA will mail a notice of hearing to the claimant that "will tell" the claimant "[t]he specific issues to be decided in [the] case." 20 C.F.R. § 404.938(b) & (b)(1). Claimants must object if they disagree with the issues the ALJ lists, 20 C.F.R. § 404.939, but there is no indication that the ALJ is under any obligation to address issues the claimant raises or that failure to raise an issue will lead to a waiver of that issue. And given that the issues under consideration are limited to issues decided before the ALJ's involvement, there would be no reason for a claimant to believe that they needed to object to an ALJ's failure to include an Appointments Clause challenge among the issues the ALJ will consider at a hearing.
There is also no indication in the regulations or the notice of hearings that failure to raise a constitutional issue in an objection will lead to the waiver of that issue in future proceedings. The notice of hearing form explains that "[i]f you disagree with the issue or remarks listed above, you must tell [the ALJ] in writing why you disagree." Admin. Tr. at 124. Rather than alert the claimant that they will forfeit unraised issues, the form explains that "[t]o prevent delays, you must tell [the ALJ] as soon as possible." Id. Again, the language in the Administration's own forms provide little to no support for the existence of an issue-exhaustion requirement for constitutional issues.
The regulations do provide a mechanism to seek the disqualification of an ALJ. If a claimant "object[s] to the administrative law judge who will conduct the hearing, [claimants] must notify the administrative law judge at [their] earliest opportunity." 20 C.F.R. § 404.940. But that regulation focuses on circumstances where the ALJ "is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." Id. There is no indication that this regulation requires parties to raise constitutional concerns with the ALJ's appointment.
And when the SSA wants to encourage claimants to raise constitutional issues, it knows how to do so. The regulations provide for an expedited appeal process that a claimant "may" use if the claimant argues and the SSA agrees "that the only factor preventing a favorable determination or decision is a provision in the law that you believe is unconstitutional." 20 C.F.R. § 404.924(d). Ignoring the language making the expedited appeals procedure optional, the regulation still would not require Bradshaw to raise her Appointments Clause challenge before the ALJ because it does not affect the merits of her claim for benefits. Instead, it only impacts whether the ALJ can address her claim.
It is also worth noting that the SSA's regulations provide a mechanism for a claimant to raise issues before the Appeals Counsel that they did not raise to the ALJ. 20 C.F.R. § 404.970(b). This suggests that the SSA does not consider there to be an *358 issue-exhaustion requirement at the ALJ level for all types of issues.
Perhaps the most compelling evidence of the Administration's approach to constitutional challenges is how it handled the very type of challenge that Bradshaw raises. In an emergency message issued in early 2018, the Administration told ALJs that if a claimant challenged the constitutionality of the ALJ's appointment, they were only to acknowledge that the claimant had raised the issue and note that neither the agency nor the ALJ had authority to resolve constitutional issues. Pl. Mot. for J. on the Pleadings at 25 (quoting Social Security Administration EM-18003, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process).
The SSA's regulations provide no support for the Acting Commissioner's position. There is nothing in the SSA's regulations that explicitly require a claimant to raise constitutional issues before an ALJ. And the language the SSA uses in its regulations is similar to language courts have found to be inconsistent with the existence of an issue exhaustion requirement. See 20 C.F.R. § 404.933(a) & (a)(2). After considering the text of the SSA's regulations, the court concludes that there is no requirement that claimants raise constitutional questions before the ALJ to preserve them for review in a federal court.
2. Should the court impose an issue-exhaustion requirement on Social Security proceedings before ALJs?
Without a statute or regulation requiring issue exhaustion, the court still can impose an issue-exhaustion requirement. But, as the Supreme Court noted in Sims , the "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." Sims , 530 U.S. at 109, 120 S.Ct. 2080.
Fourth Circuit precedent controls the court's resolution of this question. In Pearson v. Colvin , the Court of Appeals explained that "the administrative hearing process is not an adversarial one[.]" 810 F.3d 204, 210 (4th Cir. 2015). The court's independent review of the procedures involved in proceedings before an ALJ bolster the conclusion that it is an inquisitorial process and not an adversarial one. Thus, it would not be appropriate to impose an issue-exhaustion requirement for constitutional claims here.
3. Other Cases Addressing this Issue
The Acting Commissioner also points out, correctly, that most courts to address this question have found that claimants waive their Appointments Clause challenges by not raising them before the ALJs. Despite the number of cases that have addressed this issue in the Acting Commissioner's favor, two factors limit the strength of this argument. First, none of the cited cases are binding on this court because the Fourth Circuit has not yet addressed this issue. And, second, most of the cases cited by the Acting Commissioner only address issue exhaustion in passing, which limits their persuasive authority.
When pressed on which cases the Acting Commissioner believed most strongly supported her position, she pointed the court to Mills v. Apfel , 244 F.3d 1 (1st Cir. 2001), and Shaibi v. Berryhill , 883 F.3d 1102 (9th Cir. 2017). Hr. Tr. 32:7-15. But upon consideration, neither case provides much support for the Acting Commissioner's position here.
In Mills , the First Circuit considered, in the immediate aftermath of Sims , whether a party could raise an issue in the district *359 court that it had not raised before a Social Security ALJ. 244 F.3d at 8. Without assessing the applicable statutes, regulations, or precedent the court of appeals declared that it had "no intention of extending" the reasoning of Sims to the ALJ level. Id. The court explained that doing so "could cause havoc, severely undermining the administrative process." Id. Because the court's rationale in Mills is not based on Supreme Court precedent, statutes, or regulations, it is unpersuasive.
Just as Mills is unpersuasive, so is Shaibi. In Shaibi , the Ninth Circuit considered whether a claimant could argue for the first time at the district court that a vocational expert relied on inappropriate sources to determine the number of jobs available to the claimant in the national economy. 883 F.3d at 1108. In determining that the claimant had waived this argument by not raising it before the ALJ, the Court of Appeals relied on its own pre- Sims precedent that required represented parties to raise issues before an ALJ to preserve them for later review. Id. at 1109 (citing Meanel v. Apfel , 172 F.3d 1111 (9th Cir. 1999), as amended (June 22, 1999) ). Because the decision in Shaibi was compelled by circuit precedent it provides no guidance for a court outside the Ninth Circuit addressing the issue after Sims.
4. Efficiency Considerations
As a final argument, the Acting Commissioner argues that the court should surrender its ability to address Bradshaw's constitutional claim in the first instance because of efficiency concerns. She claims that a decision in Bradshaw's favor would lead to "thousands" of cases being remanded to the agency for reconsideration. This result, the Acting Commissioner claims, "would further burden an already-stressed system and add even more months to the wait times for first time claimants." Resp. to Pl.'s Mot. for J. on the Pleadings at 17.
The Acting Commissioner points to two cases in support of this proposition: Lucia and United States v. L.A. Tucker Truck Lines, Inc. , 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952). The Lucia citation directs the court to the portion of the opinion that says a timely objection is necessary to receive relief on an Appointments Clause challenge. As the court noted at the outset, this is true, but it does not explain what constitutes a timely objection in a Social Security proceeding. Reliance on L.A. Tucker presents a similar problem. There, the Supreme Court explained that a party must make an objection "at the time appropriate under [the administrative body's] practice." 344 U.S. at 37, 73 S.Ct. 67. As noted above, the SSA's regulations for practice before an ALJ do not require issue exhaustion. Thus these cases do not compel or persuade the court to give up its ability to address Bradshaw's constitutional challenge.
The court is also not persuaded by the parade of horribles that the SSA claims will result from a ruling in Bradshaw's favor. To begin with, the Acting Commissioner has provided no concrete facts in support of her claims. And any inefficiencies or extended wait times resulting from a ruling in Bradshaw's favor are problems of the SSA's own making. Nearly two decades have passed since the Supreme Court noted that the SSA's regulations did not include an issue-exhaustion requirement, but that it was "likely that the Commissioner could adopt a regulation that did require issue exhaustion." Sims , 530 U.S. at 108, 120 S.Ct. 2080. The SSA could have addressed this issue at any time but did not do so. The complications arising from its failure to act do not justify judicial imposition of an issue-exhaustion requirement.
Even assuming the SSA's efficiency argument was compelling, the separation of *360 powers concerns arising from its position outweigh efficiency considerations.
The SSA is asking the judicial branch to voluntarily cede its authority to address constitutional questions unless and until an administrative agency first addresses the issue. And it makes this request without a statutory or regulatory basis and outside the traditional circumstances that justify a court imposing an issue-exhaustion requirement. The SSA's position, if adopted, would have serious implications for the allocation of power between the three branches of our Government.
If the judicial branch were to impose an issue-exhaustion requirement when the legislative and executive branches have declined to do so, the courts risk usurping the authority of these other branches. As the Supreme Court noted in Sims , issue-exhaustion requirements are principally creatures of statute or regulation. 530 U.S. at 107, 120 S.Ct. 2080. And courts should respect the decisions that Congress and agencies have made on these issues when considering whether exhaustion is required. See McCarthy v. Madigan , 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("[A]ppropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme.").
Congress has not required parties to raise constitutional issues before the SSA. And while the SSA has encouraged parties to raise constitutional issues that preclude a decision in their favor, 20 C.F.R. § 404.924, it has not required parties to raise all constitutional issues that could be present.
Adopting the Acting Commissioner's position would effectively require the court to act where Congress has chosen not to and to strengthen and expand the scope of a regulation enacted by the agency. In other contexts, the Supreme Court has cautioned courts against "impos[ing] additional exhaustion requirements beyond those provided by Congress or the agency[.]" Darby v. Cisneros , 509 U.S. 137, 146-47, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (discussing whether courts could expand the scope of an exhaustion requirement in the Administrative Procedure Act). That is exactly what the Acting Commissioner suggests the court do here, and it will decline the invitation to do so.
Even if it were appropriate for the judicial branch to design an issue-exhaustion requirement for Social Security proceedings, the courts are poorly equipped to do so in a way that adequately accounts for the interests of both the Administration and claimants. For example, should the issue-exhaustion requirement apply to issues as that term is defined in the regulations; all issues that a claimant could conceivably present to an ALJ; or should there be, as the Supreme Court has hinted, an exception for constitutional issues? See Mathews v. Eldridge , 424 U.S. 319, 329 n.10, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("If Eldridge had exhausted the full set of available administrative review procedures, failure to have raised his constitutional claim would not bar him from asserting it later in a district court."). And if claimants must raise constitutional issues before the Administration, do they have to raise any conceivable constitutional issue, or should the court follow the SSA's lead and only require claimants to raise constitutional issues that would prevent the claimant from prevailing before the ALJ? See 20 C.F.R. § 404.924(d).
Similarly, it is difficult to discern who should be subject to this issue-exhaustion.
*361 Should it apply to all claimants or should it apply, as the Ninth Circuit has held, to only claimants represented by attorneys? See Shaibi , 883 F.3d at 1109.
And how strictly should the issue-exhaustion requirement be applied? Should failure to raise an issue before the ALJ be an absolute bar to raising it before a district court or should there be exceptions for newly discovered issues, as there are before the ALJ and the Appeals Counsel? See 20 C.F.R. § 404.970(b).
The answers to each question affect both the SSA's operations and rights of every claimant who has or will appear before it. The balancing of these interests and the weighing of the resulting costs is much more well-suited for rigors of bicameralism and presentment, or at least notice and comment rulemaking. In those venues all interested stakeholders may have a say, instead of only two parties engaged in litigation.
Who can blame the SSA for asking the judiciary to abdicate its ability to address constitutional questions in the first instance? Over time the judicial branch has shown itself willing to yield various aspects of its decision-making ability to administrative agencies. See, e.g., Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs. , 545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005) ; Chevron, U.S.A., Inc. v. Nat. Res. Def. Council , Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ; Bowles v. Seminole Rock & Sand Co. , 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). And each instance represents a diminution of the judicial branch's authority. Perez v. Mortg. Bankers Ass'n , --- U.S. ----, 135 S.Ct. 1199, 1217, 191 L.Ed.2d 186 (2015) (Thomas, J. concurring).
But constitutional questions are often treated differently. As noted above, the Supreme Court has suggested, in passing, that parties need not raise constitutional issues before the Social Security Administration to preserve them so long as they otherwise exhaust their administrative remedies. See Mathews , 424 U.S. 319, 319 n.10, 96 S.Ct. 893. And there are many other instances of courts being reluctant to apply the traditional exhaustion requirements to constitutional questions. 4 Charles H. Koch, Jr., Admin. Law & Practice § 12:21 n.46 (3d ed. 2018) (citing cases).
Courts should hesitate before allowing administrative agencies to exercise dominion over questions of constitutional law. Whatever expertise agencies have that make it appropriate to give weight to their assessments on other matters, they generally lack the authority and institutional competence to address constitutional issues. See Mathews v. Diaz , 426 U.S. 67, 76, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("[T]his constitutional question is beyond the Secretary's competence.").
On the other hand, as the Constitution explains, "the judicial Power" extends "to all Cases ... arising under this Constitution[.]" U.S. Const. Art. III, § 2. To paraphrase the late Justice Scalia, this does not mean some of the judicial power, but all of the judicial power. See Morrison v. Olson , 487 U.S. 654, 705, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) (Scalia, J. dissenting). Thus, deciding questions of constitutional law and assessing whether the branches are complying with the Constitution's requirements are at the core of the judicial power. The courts should vigorously defend its ability to address these types of issues, not voluntarily concede it to another branch of government.
The court does not doubt the sincerity of the SSA's concerns over efficiency. But the Constitution does not exist to guarantee efficiency; it exists to guarantee *362 individual liberty. See INS v. Chadha , 462 U.S. 919, 945, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) ("[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."). And it does so by separating governmental powers among the three branches and entrusting that each branch will resist attempts by the other branches to expand their authority. See The Federalist No. 51 (James Madison) ("But the great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others."). Courts voluntarily relinquishing their ability to consider constitutional questions in the first instance might lead to increased efficiency for the SSA, but it would lead to reduced protection for individual liberty. See Dep't of Transp. v. Ass'n of Am. R.Rs. , --- U.S. ----, 135 S.Ct. 1225, 1255, 191 L.Ed.2d 153 (2015) (Thomas, J. concurring) ("The end result may be trains that run on time (although I doubt it), but the cost is to our Constitution and the individual liberty it protects."). The court cannot approve of this tradeoff and will not impose an issue-exhaustion requirement for constitutional questions.
5. Conclusion
After applying the framework set out by the Supreme Court in Sims , the court cannot find that Bradshaw needed to raise her Appointments Clause challenge before the ALJ to preserve it for review in federal court. No statute or regulation requires a claimant to raise constitutional issues before an ALJ. Because Bradshaw has complied with the SSA's regulations, there is no reason to bar her from raising her Appointments Clause challenge in this court. And given that proceedings before the ALJ are non-adversarial and the attendant constitutional concerns present here, it would be inappropriate for the court to impose an issue-exhaustion requirement for constitutional issues. Thus, the court concludes that Bradshaw has raised her Appointments Clause challenge in a timely manner and it is appropriate for the court to consider its merits.
b. Did the appointment process for the ALJ who decided Bradshaw's case comply with the Appointments Clause?
The Constitution provides two methods for appointing officers of the United States. To begin with, the President may, with the advice and consent of the Senate, appoint "ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not ... provided for" in the Constitution. U.S. Const. art. II § 2. And the Constitution also allows Congress to "vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments." Id. Thus, when it comes to the appointment of officers, the Constitution allows two methods (and only two methods) for those appointments to take place.
The court must initially determine whether SSA ALJs are inferior officers of the United States or federal government employees.[3] In reaching its decision in Lucia that SEC ALJs were inferior officers, the Supreme Court applied the "significant authority" test. Lucia , 138 S.Ct. at 2051-52 (citing Freytag v. Comm'r , 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ). Justice Thomas noted in his concurring *363 opinion that it would be more appropriate to apply a standard based on the Appointments Clause's original public meaning, which would focus on whether the official "perform[ed] an ongoing, statutory duty-no matter how important or significant the duty." Id. at 2056 (Thomas, J. concurring) (citing Jennifer Mascott, Who Are "Officers of the United States"? , 70 Stan. L. Rev. 443, 564 (2018) ). But the court need not spend much time on determining the appropriate standard because the SSA does not dispute Bradshaw's contention that SSA ALJs are inferior officers. Def.'s Resp. to Pl.'s Mot. at 13 n.1. Given that the Acting Commissioner has conceded this issue, the court will find that SSA ALJs are inferior officers for Appointments Clause purposes.
Since SSA ALJs are inferior officers, the Appointments Clause requires that the President, a court of law, or the head of a department appoint them. The SSA has not challenged Bradshaw's contention that the SSA improperly appointed the ALJ who issued the decision below and the SSA's post-hearing submission confirms this fact. Gehlken Dec. ¶¶ 3-10, D.E. 28-1. Thus the court finds that the appointment of the ALJ who issued the decision below violated the Appointments Clause. Bradshaw is entitled to have the court remand this matter to the SSA for consideration by a validly appointed ALJ.
III. Conclusion
For the reasons discussed above, the court finds that Bradshaw's Appointments Clause challenge is both timely and meritorious. The court thus grants Bradshaw's Motion for Judgment on the Pleadings (D.E. 15), denies the Acting Commissioner's Motion for Judgment on the Pleadings (D.E. 18), and remands this matter to the SSA for consideration by a validly appointed ALJ.

The parties consented to having a United States Magistrate Judge conduct all proceedings under 28 U.S.C. § 636(c). D.E. 13.

The Acting Commissioner cites many cases in her memorandum to the court that do not involve the SSA. Resp. to Pl.'s Mot. for J. on the Pleadings at 12-14. She claims that these cases support its contention that, in general parties must make Appointments Clause challenges during administrative agency proceedings before a federal court may review the issue. Id. But Sims requires courts to assess an agency's organic statute and regulations when determining whether issue exhaustion is required at any given agency. So cases involving the statutes and regulations of other agencies are irrelevant to the court's analysis of whether Bradshaw had to raise her Appointments Clause challenge to the SSA ALJ before raising it in this court.

There is no contention here that SSA ALJs are principal officers of the United States.