**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAUL MISKEY,
*Plaintiff-Appellant*,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,
*Defendant-Appellee.*

No. 20-16597

D.C. No.
2:19-cv-00027-
JCM-VCF

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted November 15, 2021
San Francisco, California

Filed May 3, 2022

Before:  Richard A. Paez and Michelle T. Friedland, Circuit
Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Friedland

---

[*] The Honorable Edward R. Korman, United States District Judge
for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Social Security

The panel affirmed in part and reversed in part the district court's decision remanding plaintiff's case to the Social Security Administration for further proceedings on plaintiff's claim that he was entitled to receive Social Security spousal benefits not reduced by the Government Pension Offset.

Under Social Security Administration ("SSA") regulations, if someone receives a government pension based on "noncovered employment"—that is, employment with compensation that was not subject to Social Security taxes—SSA will apply the Government Pension Offset ("GPO") to reduce any spousal benefits that the person also receives. SSA will not apply the GPO to an individual's spousal benefits, however, if that person receives a government pension based on "covered employment"—that is, employment with compensation that was subject to Social Security taxes. Plaintiff, who receives two government pensions, one from noncovered employment and one from covered employment, alleged that the GPO should not apply to his benefits because he had been covered by Social Security taxes for approximately the last nineteen and one half years of his career.

The panel held that the GPO applied to plaintiff's spousal benefits, but that a remand to the agency was needed to determine whether SSA was entitled to recoupment for

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

overpayment of benefits paid without the offset. The panel held that under both the old and new version of Social Security regulation 20 C.F.R. § 404.408a, the existence of plaintiff's pension earned through noncovered employment triggered the GPO's application to his spousal benefits notwithstanding his later covered employment in a job with a different pension plan. The panel therefore reversed the district court's decision with respect to the application of the GPO and held that the ALJ correctly determined that the GPO applied to plaintiff's spousal benefits.

The panel held that the ALJ's finding of plaintiff's fault for the overpayment was not supported by substantial evidence and that the district court did not abuse its discretion by remanding the case to the agency for further proceedings. On remand, the agency could consider whether any evidence in the record beyond that relied on by the ALJ supported the proposition that plaintiff was at fault for the overpayment and, if so, whether recoupment "would be against equity and good conscience." 42 U.S.C. § 404(b)(1).

---

**COUNSEL**

Richard E. Donaldson (argued), Las Vegas, Nevada, for Plaintiff-Appellant.

Elizabeth Firer (argued), Special Assistant United States Attorney; Deborah Lee Stachel, Chief Counsel, Region IX; Christopher Chiou, Acting United States Attorney; Office of General Counsel, Social Security Administration, San Francisco, California; for Defendant-Appellee.

**OPINION**

FRIEDLAND, Circuit Judge:

Under certain circumstances, the Government Pension Offset ("GPO") reduces the amount of Social Security spousal benefits paid to an individual who is also receiving a government pension. *See* 20 C.F.R. § 404.408a(a). Paul Miskey contends that he is entitled to receive spousal benefits that are not reduced by the GPO. For a period during Miskey's administrative proceedings, the Social Security Administration ("SSA" or the "agency") agreed with Miskey and paid him spousal benefits without applying any offset. Ultimately, though, the agency decided that the GPO should apply. The agency then temporarily withheld Miskey's spousal benefits to recoup approximately $15,000 in overpayments to Miskey, and it reduced Miskey's spousal benefits going forward.

On appeal, the parties dispute whether the GPO applies to Miskey's spousal benefits and, if it does apply, whether the agency was entitled to recoup the overpayment. We hold that the GPO applies to Miskey's spousal benefits but that a remand to the agency is necessary to determine whether SSA was entitled to recoupment.

**I.**

Under SSA regulations, if someone receives a government pension based on "noncovered employment"— that is, employment with compensation that was not subject to Social Security taxes—SSA will apply the GPO to reduce any spousal benefits that the person also receives by two-thirds of the amount of the pension. 20 C.F.R. §§ 404.408a(a)(1)(ii), 404.408a(a)(2), 404.408a(d)(1)(i). SSA will not apply the GPO to an individual's spousal

benefits, however, if that person receives a government pension based on "covered employment"—that is, employment with compensation that *was* subject to Social Security taxes. *See id.* § 404.408a(a)(2).

Miskey currently receives two government pensions, one from noncovered employment and one from covered employment. His first pension, administered by the Public Employees' Retirement System of Nevada ("Nevada PERS"), is from his noncovered employment with the Nevada Department of Transportation ("Nevada DOT") from 1979 to 1994 and pays approximately $1,000 per month. Miskey's second pension, which is not administered by Nevada PERS, is from his covered employment with the Las Vegas Valley Water District from 1994 to 2013 and pays approximately $4,100 per month.

In August 2013, four years after the death of his wife, Miskey applied for Social Security spousal benefits. At that point, he was receiving only the pension from his noncovered employment with the Nevada DOT. In his application interview, Miskey accurately reported that he was receiving a monthly government pension from noncovered employment. Shortly after his application interview, SSA informed Miskey that he would soon begin receiving $373 per month in spousal benefits, an amount that reflected the GPO reduction.

Around this time, Miskey retired from his job at the Water District and began receiving his second government pension as well—the one from covered employment. Miskey then submitted a request for reconsideration by SSA of his spousal benefit amount. He argued that the GPO should not apply to his benefits because he had been covered by Social Security taxes "for approximately the last nineteen and one half (19.5) years" of his career. Miskey pointed to

a provision of the Social Security Program Operating Manual System ("POMS"),[1] which—according to his reading—provided that the GPO does not apply to an individual who was covered by Social Security throughout the last sixty months of government employment. *See* Soc. Sec. Admin., POMS § GN 02608.107. He attached pay stubs from the Water District to prove that he had worked in covered employment for at least sixty months. He did not attach any documentation regarding his pension from his earlier, noncovered employment with the Nevada DOT.

Based on the information Miskey provided in his request for reconsideration, SSA decided that the GPO did not apply to Miskey's spousal benefits. In February 2014, SSA sent Miskey a Notice of Change in Benefits, which said that he would begin receiving full spousal benefits of $1,067 per month and would receive a lump-sum payment to compensate him for the prior months during which the GPO had been applied to his benefits. In explaining the agency's reasoning for the change, the notice said that "[u]pon review, we found that you made a mistake when you filled out the [August 2013] application," and noted that Miskey had answered "yes" when asked if he received a government pension based on noncovered employment.

For reasons that are unclear in the record, in the summer of 2015, SSA took another look at Miskey's spousal benefits. Upon realizing that he was receiving a government pension based on noncovered employment, the agency changed course again and decided the GPO *did* apply to

---

[1] According to SSA, "[t]he POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits." Soc. Sec. Admin., POMS Home, https://secure.ssa.gov/apps10/.

Miskey's spousal benefits. SSA reduced Miskey's monthly benefits to $407 per month and calculated that it had overpaid Miskey by just over $15,000 during the months when Miskey had been receiving full benefits.

Miskey challenged the SSA's decision to re-apply the GPO to his spousal benefits. After an August 2015 meeting with SSA personnel to discuss the GPO and the asserted overpayment, Miskey submitted a formal request to the agency for reconsideration. In January 2016, SSA wrote to Miskey, explaining that it stood by its decision to apply the GPO but that it could "see where [Miskey's] confusion came from." SSA asserted in that communication that Miskey had been overpaid $15,200 and was obligated to repay it. In February 2016, Miskey requested a waiver of the overpayment recoupment, but his request was denied. Miskey then requested a hearing before an ALJ. In the meantime, the agency began recouping the overpayment by withholding Miskey's spousal benefits.[2]

Miskey appeared at his ALJ hearing in 2017. In a memorandum submitted in advance of that hearing, he argued that the GPO did not apply to his benefits. Even if it did, Miskey argued, recoupment of the overpayment should be waived because he was not at fault for the overpayment and recoupment would be "against equity and good conscience." 42 U.S.C. § 404(b)(1).

The ALJ ruled against Miskey. She decided that the GPO did apply to his benefits and that he was at fault for the overpayment because, among other reasons, he had "misrepresented to the agency that his PERS pension and

---

[2] At oral argument, the parties informed us that SSA recouped the entire asserted overpayment.

Las Vegas Water District pensions stemmed from the same entity." The ALJ decided that the agency was therefore entitled to recoup the overpayment. Miskey appealed the ALJ's decision, and the Social Security Appeals Council issued a pro forma denial of that appeal. The ALJ's decision thus constituted the agency's final decision in Miskey's case.

Miskey sought review of the agency's decision in the United States District Court for the District of Nevada. *See* 42 U.S.C. § 405(g). The district court adopted the recommendation of a magistrate judge to remand the case to SSA. In doing so, the court entered a judgment reversing SSA's final decision and sent the case back to the agency for further proceedings. Miskey asked the court to reconsider its order remanding to the agency for further proceedings, but the court declined.

Miskey timely appealed the district court's judgment. He argues that the district court should have ordered payment of Miskey's full spousal benefits. Miskey maintains that the GPO does not apply to his benefits and that, even if it does, he should not have had to return the overpayment because he was not at fault and equitable considerations weigh against recoupment.

## II.

A "district court's decision to affirm, reverse or modify a determination of the Social Security Administration is reviewed de novo on appeal." *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). "Our review of the [agency]'s decision is 'essentially the same as that undertaken by the district court.'" *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (quoting *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). We must "affirm the ALJ's findings of fact if they are supported by substantial evidence and if the ALJ's

decision was free of legal error." *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

When the district court has decided to reverse an ALJ's denial of benefits and has remanded the case to the agency, the district court's "decision whether such a remand is for further proceedings or for an immediate payment of benefits is reviewable for abuse of discretion rather than de novo." *Harman*, 211 F.3d at 1173. "Normally, the decision of a trial court is reversed under the abuse of discretion standard only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Id.* at 1175.

## III.

Miskey and SSA dispute whether the GPO applies to his spousal benefits, and if it does, whether the agency was entitled to recoup the overpayment that it made to Miskey during the period when it believed the GPO did not apply. We hold that the GPO applies to Miskey's spousal benefits, but that a remand to the agency is needed to determine whether SSA was entitled to recoupment.[3]

---

[3] Miskey argues that the district court remanded this case without engaging in a thorough analysis of the merits and therefore deprived him of an opportunity for "meaningful judicial review." He appears to frame his argument as a challenge to the district court's remand authority, but there is no question that the district court had statutory authority to remand the case after entering a final judgment on the merits that reversed the agency's decision. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 101 (1991) (explaining that the sole statutory

**A.**

Whether the GPO applies to Miskey's spousal benefits involves undisputed facts and a straightforward application of an agency regulation. The ALJ did not make any legal errors in applying that regulation, and the district court therefore erred by not affirming the ALJ on that issue.

Only a few facts are relevant to the application of the GPO. Miskey receives a government pension based on his noncovered employment with the Nevada DOT from 1979 to 1994. Miskey also receives a different government pension, through a different pension plan, based on his covered employment with the Las Vegas Valley Water District from 1994 until his retirement in 2013. The sole point of contention is a legal one: whether, in light of these undisputed facts, Miskey's spousal benefits are subject to the GPO.

The rules regarding the GPO are in 20 C.F.R. § 404.408a, which was amended during the life of this case. In August 2013, when Miskey first applied for spousal benefits, the regulation read, in relevant part: "Your monthly Social Security benefit as a spouse will always be reduced because of your [noncovered] Government pension *even if you afterwards return to work for a government agency and that work is covered by Social Security*." *Id.* § 404.408a(a) (effective before July 15, 2015) (emphasis added). The regulation was amended in 2015, before Miskey requested his ALJ hearing. The amendment removed the regulatory

requirement of a so-called sentence-four remand is that it must "accompany a final judgment affirming, modifying, or reversing the administrative decision"). At bottom, then, Miskey's argument is that the district court's merits analysis was flawed. We review the merits issues de novo in the analysis that follows.

language quoted above from subsection (a) and inserted an analogous provision in what became subsection (b)(6). Under that new subsection, an individual's spousal benefits will not be reduced by the GPO "[i]f you are receiving a government pension and the last 60 months of your government employment were covered by both Social Security and the pension plan that provides your government pension." *Id.* § 404.408a(b)(6). But, crucially, the subsection goes on to clarify that:

> *We will always reduce your monthly spouse's benefit* if you receive a government pension based on noncovered employment and you later go back to work for a Federal, State, or local government, *unless*: (A) Your final 60 months of Federal, State, or local government employment were covered by Social Security; *and (B) Both your earlier and later Federal, State, or local government employment were under the same pension plan*.

*Id.* § 404.408a(b)(6)(ii) (emphasis added).

The parties do not address which version of § 404.408a applies in this case, or whether both versions are relevant given that Miskey started receiving benefits while the old version was in effect and has continued receiving benefits while the new version has been in effect. But we need not decide the import of the regulation's amendment because, under either version, it is equally clear that the GPO applies to Miskey's spousal benefits.

The old version of the regulation provided that an individual in Miskey's position—with a pension based on noncovered employment and another pension based on later,

covered employment—"will always" have his benefits reduced by the GPO. *Id.* § 404.408a(a) (effective before July 15, 2015). And the new version of the regulation implements an exception to the GPO for individuals with a noncovered pension who end their careers in government service with sixty months of covered employment—but only if the "earlier and later Federal, State, or local government employment were under the same pension plan." *Id.* § 404.408a(b)(6)(ii)(B). It is undisputed that Miskey's two government jobs were not under the same pension plan. The existence of Miskey's Nevada PERS pension, which he earned through noncovered employment with the Nevada DOT, therefore triggers the GPO's application to his spousal benefits notwithstanding his later covered employment with the Las Vegas Valley Water District.[4]

Although both versions of the governing regulation are unambiguous, SSA has published various documents about the GPO that are less clear. Over the course of this litigation, Miskey has pointed to at least four SSA documents, which he argues provide that the GPO does not apply to his benefits.[5] In summarizing the GPO's rules, these documents

---

[4] To the extent that Miskey argues that § 404.408a is inconsistent with section 418 of the Social Security Protection Act of 2004, we reject that argument. Section 418 increased from one day to sixty months the amount of time an individual has to work in covered employment at the end of his career in order for a pension earned from *that employment* to not trigger the GPO. *See* Social Security Protection Act of 2004, Pub. L. No. 108-203, § 418, 118 Stat. 493, 531 (codified as amended at 42 U.S.C. § 402(k)). But the statute does not say that ending a career with sixty months of covered employment means that a *different* pension earned from noncovered employment cannot still trigger the GPO.

[5] Miskey cites: (1) a provision of the Social Security POMS, *see* Soc. Sec. Admin., POMS § GN 02608.107 (2021); (2) a provision of the Social Security Handbook, *see* Soc. Sec. Admin., Social Security

fail to adequately explain what should happen when a beneficiary has multiple government pensions. For example, the relevant provision of the Social Security POMS provides that the "GPO does not apply if an individual was covered by both the government retirement system and Social Security throughout his/her last 60 months of Federal, State, and local government service." Soc. Sec. Admin., POMS § GN 02608.107 (2021). The other documents contain similar language.

These documents do not entitle Miskey to spousal benefits free of the GPO. Because § 404.408a is unambiguous and clearly provides that the GPO applies to Miskey's spousal benefits, and because Miskey has not meaningfully challenged the regulation, which appears reasonable and otherwise valid,[6] the regulation controls here. We need not decide whether, in the absence of an unambiguous regulation, the SSA documents Miskey has cited could be entitled to *Auer* deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (holding that "the possibility of deference" under *Auer v. Robbins*, 519 U.S. 452 (1997), to an agency's interpretation of its own

---

Handbook § 1836.4 (2016); (3) a two-page summary of the GPO, *see* Soc. Sec. Admin., SSA Pub. No. 05-10007, Government Pension Offset 1–2 (2012) ("GPO Factsheet"); and (4) an SSA training curriculum for claims specialists, *see* Soc. Sec. Admin., SSA Pub. No. 25-1266, Title II Claims Specialist Basic Training Curriculum: Unit 2 Modules 12–15, at 89 (2018).

[6] We reject Miskey's only argument that implicates the validity of the regulation, which is that the GPO is unconstitutionally vague. As we have explained, the governing regulation unambiguously directs that the GPO applies to Miskey's spousal benefits. Even assuming that the void-for-vagueness doctrine could apply to a regulation about the provision of government benefits, neither this regulation nor the GPO more generally is vague in any sense relevant here.

regulation "can arise only if a regulation is *genuinely ambiguous*" (emphasis added)).[7]   The district court should have affirmed the ALJ's decision that the GPO applies to Miskey's spousal benefits.  That said, the ambiguous nature of the SSA documents Miskey has cited could have confused Miskey and thus could be a factor in whether he was at fault for the overpayment.

## B.

We next consider whether the SSA was entitled to recoup the overpayment.  The agency's recoupment was proper unless both of the following are true: (1) Miskey was "without fault" for the overpayment, and (2) recoupment "would defeat the purpose of [Title II] or would be against equity and good conscience."  42 U.S.C. § 404(b)(1).  The ALJ had determined that Miskey was at fault for the overpayment and therefore did not reach the second prong of this analysis.  We agree with the district court that the case

---

[7] Nor need we consider whether the documents could be entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  Even if these documents were entitled to deference, the documents do not resolve whether the GPO applies to Miskey's spousal benefits.  For instance, the GPO Factsheet says that its summary of the rules applies "generally," but not that it will apply in every case.  And all four documents implicitly assume that a beneficiary will have only one government pension.  The GPO Factsheet and the Handbook contain the phrases "whose government pension" or "whose pension" (singular), and the POMS and the training curriculum both refer to "the government retirement system" (singular).  The documents simply do not address whether an individual with both a noncovered pension and a covered pension will have his spousal benefits reduced by the GPO.

should be remanded for further analysis of the recoupment issue.**[8]**

The agency concedes on appeal that the ALJ's determination regarding Miskey's fault for the overpayment was "problematic." We agree and hold that the ALJ's finding of Miskey's fault was not supported by substantial evidence. An individual is at fault for an overpayment if it resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The evidence cited by the ALJ does not support a finding of fault based on any of those criteria.

---

**[8]** Miskey argues that the agency violated his right to due process by failing to provide adequate notice that it would reduce his spousal benefits and recoup the overpayment. Because Miskey has not explained what redress he seeks for any inadequate notice, let alone explained what he would have done differently if he had received better notice, we cannot grant any relief on this claim. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim.").

First, the ALJ found that Miskey "misrepresented to the agency that his PERS pension and Las Vegas Water District pensions stemmed from the same entity." But the ALJ's citations for that proposition consist of a letter from December 2015, regarding Miskey's Nevada PERS pension, and Miskey's March 2016 request for a hearing about the overpayment. Those documents cannot support the proposition that Miskey made a misrepresentation that caused the overpayment, because they are dated *after* August 2015, by which time the agency had already concluded that there had been an overpayment and decided to re-apply the GPO to Miskey's benefits.

Second, the ALJ wrote that "[n]otes from the agency indicate that the pension amount was changed because [Miskey] provided misleading information indicating that his work with the water district . . . was [for] the same employer as [his work for] the Nevada State Department of Transportation." There is indeed a note from an SSA employee to that effect in Miskey's file, which says that "the offset was erroneously removed based on the misinformation provided." But the source of that misinformation, according to the note, was the request for reconsideration that SSA received from Miskey on December 20, 2013. In that request Miskey never falsely said (1) that his Nevada DOT employment was with the same employer as his Water District employment, or (2) that his Nevada DOT employment was covered by Social Security. To the contrary, he explicitly told SSA that he had been an "employee of the State of Nevada and paid into the NVPERS system" for fifteen years, and that "in or about March 1994 . . . [he] went to work for the Las Vegas Valley Water District." He also wrote that the Water District "is a local governmental unit governed by Clark County, Nevada." It was not reasonable to conclude from that

document that Miskey intentionally misled SSA into believing that his work for the State of Nevada and for the Las Vegas Valley Water District ("a local governmental unit") were for the same employer or were covered by the same pension plan. Although Miskey did not explicitly state in his request for reconsideration that his compensation for his Nevada DOT employment had been exempt from Social Security taxes, he wrote that he left his employment with the Nevada DOT in 1994. He also said that he has worked in covered employment "since 1994." The implication of those statements is that his employment before 1994—at the Nevada DOT—was not covered.

Third, the ALJ said that Miskey failed "to provide the correct information to the agency, upon his receipt of express notification of the underlying reason for" SSA's decision to remove the GPO in February 2014. The ALJ also wrote that "[t]he record lucidly illustrates that when the claimant's benefits were erroneously increased to $1,067 . . . it was because the agency had been provided Water District pay stubs, suggesting that his pension was a covered one" (emphasis removed). But the record is far from lucid on this point. In a notice dated February 8, 2014, the agency explained in a single paragraph why the GPO had initially been applied to Miskey's spousal benefits and subsequently removed. The notice said:

> We received your request to reconsider your government pension offset. Upon review, we found that you made a mistake when you filled out the application. You answered "yes" to the question "QUALIFY FOR US FED/STATE/LOCAL GOVT PENSION BASED ON ANY WORK YOU

PERFORMED    WHICH    WAS    NOT
COVERED UNDER SS (Y/N): Y".

This paragraph does not provide substantial evidence for the proposition that Miskey "[f]ail[ed] to furnish information which he knew or should have known to be material." 20 C.F.R. § 404.507.  The implication from the ALJ's reasoning is that Miskey should have corrected SSA's apparent misapprehension that Miskey had never received a government pension based on noncovered employment.  But Miskey had already told the government that he was receiving such a pension—which is why, in 2013, the GPO had been applied to his benefits to begin with.  And Miskey apparently was under the impression that the only thing that mattered to determine whether the GPO applied to his spousal benefits was that he had sixty months of covered employment at the end of his government career.  The quoted paragraph from SSA's notice is not sufficiently clear to explain to someone in Miskey's position that he would receive benefits to which he was not entitled if he did not inform the agency about his pension from his employment with Nevada DOT—information that he had already provided to SSA with his initial application.  Indeed, the record suggests that Miskey had a good faith—though mistaken—belief that the GPO did not apply to his spousal benefits in light of his covered employment with the Water District.

Because the ALJ has pointed to no evidence that "a reasonable mind might accept as adequate" to support the conclusion that Miskey was at fault for the overpayment, we hold that the ALJ's finding that Miskey was at fault is unsupported by substantial evidence.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

When a reviewing court "reverses an administrative agency determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)). A district court's decision to remand for further proceedings, instead of for an immediate award of benefits, is reviewed for abuse of discretion. *Harman*, 211 F.3d at 1173.

The district court did not abuse its discretion by applying the default rule and remanding Miskey's case to the agency for further proceedings, instead of for immediate payment of benefits. On remand, the agency may consider whether any evidence in the record beyond that relied on by the ALJ supports the proposition that Miskey was at fault for the overpayment. And, if Miskey is determined not to have been at fault, the agency must decide in the first instance whether recoupment of Miskey's repayment "would defeat the purpose of [Title II] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). A remand for further proceedings is indeed "*required* to allow [the] agency to consider in the first instance an issue that it had not previously addressed." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (emphasis added). SSA has never made a determination whether recoupment of Miskey's overpayment would frustrate the purpose of Title II or be against equity and good conscience—a determination that is necessary for Miskey to prevail on his claim.

## IV.

For the reasons above, we reverse the district court's decision with respect to the application of the GPO, and we hold that the ALJ correctly determined that the GPO applies to Miskey's spousal benefits. We affirm the district court's

decision to remand for the agency to determine whether it was entitled to recoup the overpayment.

**AFFIRMED** in part and **REVERSED** in part.