**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SARAHROSE KILPATRICK,
*Plaintiff-Appellant,*

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,
*Defendant-Appellee.*

No. 20-35741

D.C. No.
6:19-cv-01640-
BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted October 8, 2021
Portland, Oregon

Filed May 27, 2022

Before: William A. Fletcher, Sandra S. Ikuta, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

## SUMMARY[*]

### Social Security

The panel affirmed the district court's judgment upholding the Commissioner of Social Security's denial of a claimant's application for Social Security disability benefits.

In accordance with Social Security Act regulations, an administrative law judge ("ALJ") is entitled to rely on a vocational expert's testimony to support a finding that the clamant can perform occupations that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 416.960(b)(2), 416.966(e). Relying on *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017), the claimant argued that because her counsel filed a post-hearing submission that provided different national job numbers than the VE, "the ALJ was required to consider the conflicting information about job numbers and resolve any conflicts." *Id*.

The panel held that the claimant read *Buck* too broadly, and *Buck* did not create the categorical obligation that claimant sought to impose. To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis, but an ALJ need not discuss all evidence that was presented. Unlike in *Buck*, claimant's attorney did not replicate the VE's methodology, and claimant's different approach led to different numbers. There is no basis to conclude that these results qualified as significant probative evidence that the ALJ was required to address. Claimant's attorney had no

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

identified expertise in calculating job figures in the national economy.

Claimant also argued that the ALJ's failure to resolve the conflict between job number estimates violated the Social Security Administration's procedural requirements. The panel held that this argument lacked merit. Under Social Security Ruling 00-4p, ALJs must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs and information in the Dictionary of Occupational Titles (DOT). No such error occurred here where the ALJ specifically asked the VE whether his testimony conflicted with the DOT, and the VE confirmed it did not.

**COUNSEL**

Christopher H. Dellert (argued), Dellert Baird Law Offices PLLC, University Place, Washington, for Plaintiff-Appellant.

Christopher Brackett (argued), Special Assistant United States Attorney; Lisa Goldoftas, Assistant Regional Counsel; Mathew W. Pile, Regional Chief Counsel, Seattle Region X; Renata Gowie, Civil Division Chief; Scott Erik Asphaug, Acting United States Attorney; Office of the General Counsel, Social Security Administration, Seattle, Washington; for Defendant-Appellee.

**OPINION**

BRESS, Circuit Judge:

In denying Sarahrose Kilpatrick's request for Social Security disability benefits, an Administrative Law Judge (ALJ) relied on the testimony of a vocational expert to conclude that a person with Kilpatrick's limitations, age, education, and work experience could still perform jobs that exist in significant numbers in the national economy. On appeal, Kilpatrick claims that the ALJ erred in not addressing competing job numbers that her counsel provided using his own methodology. We have held in the context of similar challenges to ALJ decisions that an ALJ need only explain his rejection of significant probative evidence. We hold here that this same standard applies to the ALJ's consideration of competing job numbers that conflict with those provided by a vocational expert. Because Kilpatrick's counsel's submission did not qualify as significant probative evidence, the ALJ was not required to address it. We thus affirm the judgment of the district court upholding the denial of benefits.

I

In 2015, Kilpatrick, then age 35, applied for disability insurance benefits and Supplemental Social Security Income under the Social Security Act. She alleged she was disabled due to physical impairments, including lumbar degenerative disc disease, obesity, and carpal tunnel syndrome. In February 2016, and later, upon reconsideration in July 2016, the Commissioner of Social Security denied Kilpatrick's claims, concluding she was not disabled.

Kilpatrick requested a hearing before an ALJ, which took place in July 2018. Kilpatrick testified at the hearing,

where she was represented by her counsel, Timothy Anderson. The ALJ also heard testimony from D.T. North, an impartial and neutral vocational expert, or "VE." North, who had over a decade of professional experience, was certified as an expert by the American Board of Vocational Experts, had published on disability management, and held a Master of Science degree in Organizational Development. Kilpatrick's attorney stipulated to North's qualifications.

The ALJ asked North whether any jobs existed in significant numbers in the national economy that an individual with Kilpatrick's limitations, age, education, and work experience could perform. North identified three such representative jobs: (1) usher, with an estimated 64,000 jobs nationally; (2) children's attendant, with an estimated 50,000 jobs nationally; and (3) sandwich board carrier, with an estimated 9,500 jobs nationally.

North testified that he had experience analyzing these jobs and that his testimony was consistent with the Dictionary of Occupational Titles (DOT). The DOT is a detailed volume published by the Department of Labor that contains descriptions of occupations that exist in the national economy, while identifying the required skill level and physical requirements for each occupation. *See* C. Kubitschek & J. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 3:93 (2021); *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016); *see also Zavalin v. Colvin*, 778 F.3d 842, 845–46 (9th Cir. 2015) (describing the DOT as the Commissioner's "'primary source of reliable job information' regarding jobs that exist in the national economy") (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)).

In response to Anderson's cross-examination, North explained his methodologies, including his use of a software

program, for identifying the number of jobs in the national economy for each of the representative occupations that he determined a person like Kilpatrick could perform. North also explained that he had limited his estimated job numbers to full-time positions only. Nevertheless, Anderson still questioned whether North's job numbers were correct. The ALJ permitted Anderson to submit a post-hearing brief on the issue within ten days.

Sixteen days later, Anderson submitted a letter objecting to North's calculations and maintaining that, in the national economy, there were in fact only 6,080 full-time usher positions, 6,080 full-time children's attendant positions, and 3,115 full-time sandwich board carrier positions. To arrive at these numbers, Anderson relied on 2011 data published by the Department of Labor in its Occupational Employment Statistics ("OES"). The OES is a source of national job numbers, although it is not directly correlated to the DOT. *See Chavez v. Berryhill*, 895 F.3d 962, 965–66 (7th Cir. 2018). In his letter, Anderson acknowledged that his estimates were not based on "the specific job DOT number which is commonly reported by the vocational expert."

To obtain his competing job numbers, Anderson employed what he termed the "straight-line method." Anderson began with the number of jobs in each OES occupation group, divided it by the number of DOT occupations within that group, then multiplied that by the percentage of full-time jobs for the larger OES group. For example, for the usher position, Anderson wrote: "Usher – National OES – 105,560 ---- 5 DOTs within OES 105,560 / 5 = 21,112 jobs. Only 28.8% is full-time. ----- 21,112 x 28.8% = 6,080 jobs nationally." In other words, the OES showed there were 105,560 jobs nationwide in the occupation group of "Usher," and that occupation group

includes five DOT occupations. Without any information on the number of jobs associated with each of the five occupations, Anderson divided the 105,560 jobs in the Usher group equally by five, estimating 21,112 jobs for each DOT occupation in the group. Because only 28.8 percent of jobs in the OES Usher group are full-time positions, Anderson estimated that only 28.8 percent of the 21,112 jobs in each of the five DOT occupations were full-time, and therefore concluded that each of the five DOT occupations had 6,080 full-time jobs. Anderson acknowledged that his "straight-line method" "may not be completely accurate," but claimed it was "the best we can do with the data we have available." The lower job figures calculated with this method, Kilpatrick argued, were not "significant" enough in number, and thus did not preclude a disability determination.

On September 6, 2018, the ALJ issued a decision finding that Kilpatrick was not disabled. In making this determination, the ALJ followed the Social Security Act's required five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that since Kilpatrick's alleged disability onset date of February 12, 2015, Kilpatrick had not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ found that Kilpatrick's lumbar degenerative disease, obesity, and carpal tunnel syndrome were severe medical impairments. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ found that Kilpatrick's impairments did not equal any listing, and that she was therefore not per se disabled. *Id.* § 404.1520(a)(4)(iii).

At step four, the ALJ examines the claimant's symptoms and decides if her "residual functional capacity" permits her to perform any past relevant work. *Id.* § 404.1520(a)(4)(iv). The ALJ concluded that Kilpatrick could perform "light

work," which included "lift[ing] 20 pounds occasionally and 10 pounds frequently" and certain time standing or walking, with regular breaks. But the ALJ found that Kilpatrick's residual functional capacity precluded her from performing any of her relevant past work.

The ALJ thus proceeded to step five, where the burden shifts to the Commissioner to prove that the claimant can perform a significant number of jobs that exist in the national economy given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c); *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Here, the ALJ relied on the VE's testimony that notwithstanding Kilpatrick's limitations, she could still "perform the requirements of representative occupations such as usher . . . children's attendant . . . and sandwich board carrier," which the ALJ found existed in significant numbers in the national economy. Thus, the ALJ concluded that Kilpatrick was not disabled. Earlier in his decision, the ALJ noted that he had received Anderson's post-hearing submission and had admitted it into evidence. But the ALJ did not comment on that submission further.

The Appeals Council denied Kilpatrick's request for review. The district court then affirmed the Commissioner's denial of benefits. This appeal followed.

## II

We "review the district court's order affirming the ALJ's denial of social security benefits de novo, and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). Kilpatrick principally argues that the ALJ committed legal

error by crediting the VE's testimony about the number of jobs that exist in the national economy that Kilpatrick could perform, without assessing the competing job numbers that Anderson advanced in his post-hearing submission. Kilpatrick further argues that because the ALJ did not resolve this alleged inconsistency, we cannot discern on appeal whether substantial evidence supports the ALJ's determination at step five.

To evaluate Kilpatrick's argument, it helps to have some understanding of a VE's role in the step-five component of a Social Security disability proceeding. At step five, as we have noted, the ALJ is tasked with determining whether a person with the claimant's limitations, age, education, and experience can perform occupations that "exist in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1). A VE provides testimony that aids the ALJ in this determination. VEs are professionals who, through their training and experience, have "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quotations and alterations omitted); *see also* Kubitschek & Dubin at § 3:89.

The Social Security Administration (SSA) contracts with VEs to provide "independen[t] and impartial[]" testimony about the physical requirements and prevalence of different jobs in the national economy. Soc. Sec. Admin., Vocational Expert Handbook, 5 (June 2020); *see also Biestek*, 139 S. Ct. at 1152; Kubitschek & Dubin at § 3:89. Due to their specialized knowledge, the SSA recognizes VEs as "reliable sources of occupational information in the evaluation of

disability claims." Social Security Ruling, SSR 00-4p, 65 Fed. Reg. 75760 (2000); *see also* 20 C.F.R. § 416.966(e) (authorizing VE testimony to assist in step-five determinations).

In accordance with Social Security Act regulations, *see* 20 C.F.R. §§ 416.960(b)(2), 416.966(e), an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy. *See Ford*, 950 F.3d at 1160; *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). As we have observed, "Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford*, 950 F.3d at 1160. Indeed, a VE's expert opinion "may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155 (rejecting argument that VE testimony could never qualify as substantial evidence when the VE refused to produce her underlying data); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.").

But although VE testimony is "inherently reliable," it is "not incontestable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). In *Buck*, a VE testified that the claimant could work in the occupations of bottling line attendant, bottle packer, and conveyer belt maker, which had national job numbers of 600,000, 8,800, and 235,000, respectively. *Id.* at 1047. But the claimant's attorneys, "allegedly using the same software program as the VE," came up with very different national job numbers: 231 bottling attendants,

2,039 bottle packers, and 26 conveyer belt makers. *Id.* When the claimant attempted to cross-examine the VE on the disparities, the ALJ limited the questioning but allowed the claimant to file a post-hearing submission on the issue. *Id.* The claimant did so, yet the ALJ then did not address the matter in his decision. *Id.*

We held that the ALJ had an obligation to resolve the dispute over the number of representative jobs the claimant could perform. *Id.* at 1052. That was because "the vast discrepancy between the VE's job numbers and those tendered by Buck, presumably from the same source, is simply too striking to be ignored." *Id.* We thus remanded for the ALJ to address the inconsistency. *Id.*

Relying on *Buck*, Kilpatrick argues that because her counsel filed a post-hearing submission that provided different national job numbers than the VE, "the ALJ was required to consider the conflicting information about job numbers and resolve any conflicts." We conclude, however, that Kilpatrick reads *Buck* too broadly, and that *Buck* does not create the categorical obligation that Kilpatrick seeks to impose.

In the context of other challenges to an ALJ's alleged failure to address evidence, we have repeatedly held that an ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quotation marks omitted). We have invoked this "significant probative evidence" standard in a variety of contexts in which Social Security claimants contended that an ALJ erred in not addressing a given argument or piece of evidence. *See, e.g.*, *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003);

*Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995); *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1382 (9th Cir. 1985), *superseded on other grounds by regulation as stated in Lambert*, 980 F.3d at 1268. This standard appropriately captures the competing interests at stake. To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis. But at the same time, a rule requiring ALJs to address every argument or piece of evidence, however meritless or immaterial, would unduly detain ALJs in their orderly consideration of Social Security disability benefits claims.

There is no reason why our usual "significant probative evidence" standard should not apply in the context of an ALJ being presented with job numbers that conflict with those of a VE. Indeed, Social Security Act regulations already provide that, in determining the number of jobs that exist in the national economy, the SSA "will take administrative notice of *reliable* job information available from various governmental and other publications." 20 C.F.R. § 416.966(d) (emphasis added); *see also Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information . . ."). Requiring an ALJ to consider competing job numbers only if they constitute significant probative evidence is also in keeping with the background rule that "in the absence of any contrary evidence, a vocational expert's testimony is one type of job information that is regarded as inherently reliable." *Ford*, 950 F.3d at 1160 (quoting *Buck*, 869 F.3d at 1051) (alterations omitted).

We did not apply the "significant probative evidence" standard by name in *Buck*, in which we remanded to the ALJ to consider evidence that conflicted with the VE's proffered

job numbers. 869 F.3d at 1052. But, in that case, specific articulation of the governing legal standard was unnecessary because the competing job numbers in that case easily qualified as significant probative evidence. In *Buck*, as we recounted above, the claimant's attorneys allegedly used the same computer software as the VE and yet generated vastly different job figures. *Id.* at 1047, 1052.

While the competing evidence in *Buck* was "too striking to be ignored," *id.* at 1052, the same cannot be said here. Unlike in *Buck*, Kilpatrick's attorney did not replicate the VE's same methodology. It is thus not surprising that Kilpatrick's different approach led to different results. And there is no basis to conclude that these results qualified as significant probative evidence that the ALJ was required specifically to address. Kilpatrick's attorney, Mr. Anderson, had no identified expertise in calculating job figures in the national economy. *See Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) (noting that, under *Vincent*, an ALJ need not discuss evidence that a lay witness is "not competent" to provide). Kilpatrick thus acknowledges on appeal, with some understatement, that Anderson "may not have the same expertise as the vocational consultant." And Anderson's own submission to the ALJ candidly conceded that his figures "may not be completely accurate."

That concession was warranted because there are obvious reasons to question Anderson's methodology. Using 2011 data that was roughly seven years old at the time, Anderson took the total number of jobs in each OES group, divided by the number of DOT occupation titles within that group, and then multiplied it by the percentage of full-time jobs for the larger group. That required the improbable assumption (and produced the improbable result) that jobs within the same OES (here, usher and children's attendant)

all had the exact same number of full-time jobs (in this case, 6,080). The Seventh Circuit has criticized an analogous "equal distribution method" as "operat[ing] on the illogical assumption that all job titles within a particular DOT job group exist in equal numbers in the national economy." *Chavez*, 895 F.3d at 966. Kilpatrick, meanwhile, identifies no support for her counsel's approach. Under all these circumstances, Anderson's submission was not significant probative evidence, and the ALJ did not err in not addressing it.

Kilpatrick also argues that the ALJ's failure to resolve the conflict between job number estimates violated the SSA's procedural requirements. This argument lacks merit. Under Social Security Ruling 00-4p, ALJs must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the *Dictionary of Occupational Titles* (DOT) . . . ." Social Security Ruling, SSR 00-4p. An ALJ thus may not rely on the testimony of a VE "without first inquiring whether that expert's testimony conflicts with the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1150 (9th Cir. 2007).

No such error occurred here. The ALJ specifically asked the VE whether his testimony conflicted with the DOT, and North confirmed it did not. The ALJ thus expressly found that North's testimony was "consistent with" the DOT. Kilpatrick provides no basis to question that determination. The only conflict in the evidence she identifies is between the VE's testimony and her counsel's competing job numbers. And for the reasons we have explained, her counsel's estimated job numbers lacked a sufficient

foundation and thus did not warrant the ALJ's further consideration.[1]

**AFFIRMED.**

---

[1] In two letters filed pursuant to Federal Rule of Appellate Procedure 28(j), Kilpatrick for the first time challenged the constitutionality of the Commissioner's appointment and purported to raise additional deficiencies in the VE's job numbers. We do not address these new arguments because "[a]n issue raised for the first time in a letter of supplemental authorities under Fed. R. App. 28(j) is ordinarily deemed waived." *United States v. Gomez-Mendez*, 486 F.3d 599, 606 n.10 (9th Cir. 2007). Kilpatrick also argues that the district court went outside the administrative record in affirming the denial of benefits. But any error was immaterial because our review of the district court is de novo, *Lambert*, 980 F.3d at 1270, and we have concluded the ALJ did not err in denying benefits.