**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TYRONE L. WHITE,
*Plaintiff-Appellant,*

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,
*Defendant-Appellee.*

No. 20-16846

D.C. No.
2:19-cv-01498-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
Allison Claire, Magistrate Judge, Presiding

Argued and Submitted November 18, 2021
San Francisco, California

Filed August 8, 2022

Before: Mary M. Schroeder, William A. Fletcher, and
Eric D. Miller, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Social Security

The panel reversed the district court's decision granting summary judgment to the Commissioner of Social Security and affirming the denial Tyrone L. White's claim for Supplemental Security Income ("SSI") benefits, and remanded to the district court with directions that the case be remanded to the agency for further proceedings.

An Administrative Law Judge ("ALJ") denied White benefits based on the testimony of a vocational expert ("VE") that there were an estimated 72,000 "Table worker," 65,000 "Assembler," and 32,000 "Film touch up inspector" jobs in the national economy that claimant could perform. After the ALJ issued her decision, claimant's attorney submitted to the Social Security Administration ("SSA") Appeals Council different estimates for those same jobs, allegedly using the same software program used by the VE. The Appeals Council considered the new evidence but denied claimant's request for review.

The panel held that under *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017), remand was required to allow the ALJ to address claimant's evidence of widely discrepant job-number estimates. The panel joined other circuits in encouraging the SSA to make the transition to a system that more accurately reflects available jobs in the current economy. Claimant's job estimates differed substantially

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

from those of the VE. The claimant estimated—using SkillTRAN Job Browser Pro and the same DOT codes the VE had used—that there were 2,957 table worker, 0 assembler, and 1,333 film tough-up inspector jobs in the national economy. The discrepancy between the VE and the claimant's estimates was comparable to the discrepancy in *Buck*. The panel concluded that remand was appropriate to resolve the discrepancy.

## COUNSEL

John D. Metsker (argued), Metsker Law Firm, San Francisco, California, for Plaintiff-Appellant.

Elizabeth Firer (argued), Special Assistant United States Attorney; Deborah Lee Stachel, Chief Counsel, Region IX; Phillip A. Talbert, United States Attorney; Social Security Administration, San Francisco, California; for Defendant-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Tyrone L. White appeals from the district court's grant of summary judgment to the Commissioner of Social Security, affirming her denial of White's claim for Supplemental Security Income ("SSI") benefits.  Due to a bullet fragment lodged in his spine, White's left leg has atrophied.  He suffers from chronic pain, and he has difficulty walking, standing, and sitting for extended periods of time.  An Administrative Law Judge ("ALJ") denied White benefits based on the testimony of a vocational expert ("VE") that there were an estimated 72,000 "Table worker," 65,000 "Assembler," and 32,000 "Film touch up inspector" jobs in the national economy that White could perform.  After the ALJ issued her decision, White's attorney submitted to the Social Security Administration ("SSA") Appeals Council different estimates for those same jobs, allegedly using the same software program as used by the VE.  According to estimates submitted by White, there were only 2,957 table worker jobs, 0 assembler jobs, and 1,333 film touch-up inspector jobs in the national economy.  The Appeals Council considered this new evidence but denied White's request for review.

We hold that under our decision in *Buck v. Berryhill*, 869 F.3d 1040, 1052 (9th Cir. 2017), remand is required to allow the ALJ to address White's evidence of vastly discrepant job-number estimates.  We therefore reverse the district court's decision granting summary judgment to the Commissioner with directions that the case be remanded to the agency for further proceedings consistent with this opinion.

## I. Background

White was born in 1971. On October 9, 2009, he was shot three times in what he described as a "random shooting." Fragments from one of the bullets remain lodged in White's S1 vertebra, projecting into his spinal canal. Due to the presence of the bullet fragment, White's left leg has atrophied; he experiences significant chronic pain; and he has difficulty sitting for more than 10–15 minutes at a time or walking more than 50–60 yards. He walks with the aid of a cane. He lives with his mother, who does the household chores, including cooking, cleaning, laundry, and yard work.

In January 2010, White was awarded SSI disability benefits. His benefits were later discontinued when he was incarcerated in California. White's prison medical records document his continuing pain and his difficulty in walking and standing. The prisons in which White was incarcerated accommodated his disability by granting him lower-bunk and lower-tier status, an extra mattress, and use of a cane. White was assigned jobs that accommodated his disability but allowed him to earn sentence credits—wiping off the dining room tables and dusting off the top of lockers in his dorm. He worked in the dining room for approximately forty minutes a day, five days per week, and in the dorms for twenty minutes a day, two days per week. He was prescribed physical therapy, but it was not able to restore his mobility.

Upon his release from prison, White continued to obtain medical treatment. His medical records document an acute, "sharp and shooting" pain in White's lower back radiating to his left foot. His symptoms were reported as being aggravated by ascending and descending stairs, lifting, bending, standing, walking, and sitting.

White submitted a new application for SSI disability benefits on June 3, 2016. The SSA initially denied his application eight days later. White appealed the denial, and a consultative neurological examination was performed in August 2016. The result of the examination was a functional capacity assessment that White was limited to lifting ten pounds frequently, twenty pounds occasionally, standing and walking up to two hours per day, and sitting up to six hours per day. White thereafter underwent an initial disability determination medical exam, and was found not disabled. White obtained legal representation and requested reconsideration. Reconsideration was denied on January 12, 2017.

White requested a hearing before an ALJ. At the hearing, the ALJ questioned White about his work history while incarcerated, and about the effect of his injury on his daily life and functioning.

The ALJ also questioned the VE, posing the following hypothetical:

> Let's assume a hypothetical individual of the claimant's age, education and vocational background who is able to lift and carry 10 pounds frequently and 20 pounds occasionally. Standing and/or walking are limited to two hours cumulatively during the workday. Sitting is limited to six hours cumulatively during the workday. Requires the use of a cane for ambulating over 100 yards and is limited to walking on even surfaces, has occasional, is able to occasionally climb ramps and stairs, cannot

climb ropes, ladders or scaffolds, is limited to occasional balancing, stooping, kneeling, crouching and crawling, cannot operate foot controls with the left lower extremity.

The ALJ then asked, "[A]re there jobs . . . in the economy for that individual?"

The VE responded with examples of three jobs that White could perform. She provided the corresponding *Dictionary of Occupational Titles* ("DOT") codes, and estimated the number of positions of each job in the national economy. She testified:

[E]xamples would be [(1)] a table worker, which is visual and inspection, DOT 739.687-182, sedentary, unskilled, SVP 2, nationally approximately 72,000 of these positions exist. [(2)] An assembler, DOT 734.687-018, sedentary, unskilled, SVP 2, nationally approximately 65,000 of these positions exist. [(3)] A film touch-up inspector with electronic components, DOT 726.684-050, sedentary, unskilled, SVP 2, nationally approximately 32,000 of these positions exist.

The ALJ asked if there would be "[a]ny erosion" in these job numbers if the individual required the ability to sit or stand, alternating every 30 minutes, without time off task. The VE answered: "No, since they're not going to be off task, no." The VE testified further that if this hypothetical individual were to need to be "off task more than 10% of the time due to the need to stretch or tak[e] longer to sit, stand, or

just other conditions" he would not be employable in "these unskilled jobs."

White's attorney cross-examined the VE, asking her about the source of the estimated job numbers. The VE testified that the numbers came indirectly from the "Bureau of Labor Statistics" and that she used an automated program, "SkillTRAN," to get the actual numbers. The ALJ questioned the VE on her choice to use SkillTRAN. The VE testified that she used SkillTRAN because "it has all the DOTs, everything is broken down. I'll have labor market information per Bureau of Labor Statistics." The VE further testified that SkillTRAN is widely used by those in the "vocational expert profession" and is considered "very reliable." White's attorney did not offer evidence contradicting the VE's estimated job numbers.

The ALJ denied White's application for SSI benefits. The ALJ applied the five-step sequential evaluation process for disability determinations required by SSA regulations. 20 C.F.R. § 416.920(a)(1). The ALJ found at the first step that White had not engaged in substantial gainful activity since his application date. *Id.* § 416.920(a)(4)(i). At the second step, the ALJ found that White had a severe impairment—a "retained bullet fragment in the left side of the S1 vertebral body and projecting into the spinal canal, with atrophy in the left lower extremity." *Id.* § 416.920(a)(4)(ii). At the third step, the ALJ found that White did not have an impairment that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1, so proceeded to step four. *Id.* § 416.920(a)(4)(iii). At the fourth step, the ALJ determined that White had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a), except

for several additional limitations, including the requirement that he be able to sit or stand, alternating every 30 minutes, without time off task. *Id.* § 416.920(a)(4)(iv).

At the fifth and final step, the ALJ determined that there were jobs that exist in significant numbers in the national economy that White could perform. *Id.* § 416.920(a)(4)(v). In making this determination, the ALJ relied on the VE's testimony that White would be able to perform the "representative occupations" of: (1) table worker (DOT code 739.687-182), (2) assembler (DOT code 734.687-018), and (3) film touch up inspector, electronics (DOT code 726.684-050). The ALJ also relied on the VE's testimony to conclude that table worker "has approximately 72,000 jobs in the national economy," that assembler "has approximately 65,000 jobs in the national economy," and that film touch-up inspector "has approximately 32,000 jobs in the national economy." The ALJ noted the VE's "professional knowledge and experience in job placement," specified that the VE "explained why SkillTRAN is reliable," and, accordingly, found the VE's job numbers testimony to be reliable. Based on the VE's testimony, the ALJ concluded that White "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that a finding of "not disabled" was therefore appropriate.

White requested a review of the ALJ's decision by the Appeals Council and submitted additional evidence to the Council. His evidence gave job estimates generated using SkillTRAN's "flagship program," Job Browser Pro. According to this evidence, there were only 2,957 table worker jobs, 0 assembler jobs, and 1,333 film touch-up inspector jobs in the national economy. White attached

screenshots of SkillTRAN Job Browser Pro showing these job numbers.

White provided to the Appeals Council descriptions of the three jobs corresponding to the DOT codes provided by the VE. A table worker "[e]xamines squares (tiles) of felt-based linoleum material passing along a conveyor and replaces missing substandard tiles." An assembler "[i]nserts paper label in back of celluloid or metal advertising buttons and forces shaped stockpin under rim." A film touch-up inspector "[i]nspects and repairs circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards." White wrote that, given the specificity of these position descriptions, the job numbers provided by the VE—tens of thousands of each job in the national economy—were "clearly inflated," "untenable," and "clearly inaccurate."

In June 2019, the Appeals Council notified White that it had denied his request for review of the ALJ's decision. The Appeals Council wrote: "You submitted reasons that you disagree with the decision. We considered the reasons and exhibited them on the enclosed Order of the Appeals Council. We found that the reasons do not provide a basis for changing the Administrative Law Judge's decision." The enclosed Order indicated that White had submitted "Exhibit 18E" as "additional evidence" and that the Appeals Council had made that evidence "part of the record." Exhibit 18E contained White's evidence concerning the job numbers for the three jobs at issue. The Appeals Council did not describe or discuss this evidence in its Notice or Order.

White timely filed a civil action in district court under 42 U.S.C. § 405(g). White provided to the district court the

evidence he had submitted to the Appeals Council and contended that the ALJ erred in relying on the VE's testimony when she determined that jobs suitable for White's limitations existed in significant numbers in the national economy. The district court granted summary judgment to the Commissioner. White timely appealed.

## II. Standard of Review

We review de novo a decision of a district court reviewing a determination of the SSA. *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). We "independently determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence . . . means . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III. Discussion

### A. Role of the Vocational Expert

Under the Social Security Act, a claimant is considered "disabled" and entitled to disability benefits only if her impairments preclude her both from conducting her past relevant work and from engaging "in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Once a claimant establishes at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the

past, or that she has a severe impairment and has no relevant past work, she has made out a prima facie case of a disability. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden then shifts to the Commissioner at step five to establish that the claimant can perform a "significant number[]" of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience. 20 C.F.R. § 416.960(c)(2); *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner can carry this burden through the testimony of a VE in cases where, as here, the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, are inconclusive as to a claimant's disability. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)*; see also* 20 C.F.R. §§ 404.1566(e), 416.960(b), 416.966(e) (permitting the use of VEs to aid in determining the specific occupations a claimant can perform); Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual, § I-2-5-50 (2014) [hereinafter SSA Manual] ("An ALJ may also determine a VE's testimony is necessary when the ALJ is determining whether the claimant's impairment(s) prevents the performance of any other work and he or she cannot decide the case under any of the tables in 20 CFR Part 404 Subpart P Appendix 2 . . . .").

The SSA contracts with VEs to provide impartial vocational testimony in hearings before ALJs. *Biestek*, 139 S. Ct. at 1152; *see also* SSA Manual, *supra*, at § I-2-1-31(B)(1) (describing the process by which SSA's Office of Hearings Operations may enter into a contract with a VE, who then is added to the Regional Office's roster). In determining whether a vocational professional is qualified to serve as a VE, the SSA considers the applicant's "overall education and experience" as well as the applicant's "current knowledge" of: (1) "[w]orking conditions and physical demands of

various occupations;" (2) "[t]ransferability of skills;" (3) "the existence and numbers of jobs at all exertional levels in the national economy;" and (4) "placing adult workers, including those with disabilities, into jobs." SSA Manual, *supra*, at § I-2-1-31(B)(1); *see also id.* § I-2-5-48. While there are no specific educational or certification requirements for VEs, a majority of VEs have a master's degree and are nationally certified rehabilitation counselors. Michelle Aliff & Katharine W. Jett, *The White Paper: A Professional and Ethical Mandate for Professional Vocational Expert Services in SSA Determinations*, 25 Rehab. Pro. 111, 113–14 (2017); *see also Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018) ("VEs tend to have master's degrees in vocational rehabilitation or psychology and often work in the field of job placement.").

An ALJ may ask a VE to provide testimony as to the physical and mental demands of a claimant's past relevant work to assess whether the claimant is still able to perform such past work. 20 C.F.R. § 416.960(b)(2). An ALJ may also ask a VE to provide an opinion in response to a hypothetical question as to whether a person with the mental and physical limitations similar to the claimant could do past relevant work or work that exists in significant numbers in the national economy. *See id.*; *id.* § 416.966(e). If the VE testifies that there are occupations that the hypothetical claimant can perform given the assumed limitations, the ALJ will typically ask the VE to provide examples of those occupations and "[i]nformation about the numbers of jobs in each occupation nationally." Soc. Sec. Admin., Vocational Experts Handbook 36 (June 2020).

VEs may use a wide range of data sources and methodologies to generate job-number estimates. *See*

*Biestek*, 139 S. Ct. at 1152–53 (describing different types of data sources VEs may use); *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020) (describing several methods of job-numbers estimation VEs use). ALJs must inquire about, and VEs must explain, any inconsistencies between their testimony and the DOT, a principal source of occupational information for SSA. Social Security Ruling, SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007); *Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989) (requiring ALJs to reject VE testimony that is inconsistent with the Medical-Vocational Guidelines). Although a VE may be cross-examined during the proceedings about the data sources or methodologies underlying her job-number estimates, there is no requirement that a VE disclose the primary data underlying the estimates prior to, during, or after the hearing. *See* SSA Manual, *supra*, at §§ I-2-5-48-60, I-2-6-74 (outlining procedures for obtaining VE testimony); *see also* Vocational Experts Handbook, *supra*, at 37 (recommending that VEs have available "any vocational resource materials" that they are likely to rely on and be prepared "to thoroughly explain" how they arrived at their opinions, and specifying that "[i]n some cases, the ALJ may ask you to provide relevant portions of materials"). Indeed, the Supreme Court recently held that VE job-numbers testimony may constitute substantial evidence supporting a finding of no disability even if the VE refuses to disclose the specific, non-public data sources on which the estimates were based. *Biestek*, 139 S. Ct. at 1157.

Some courts, particularly the Seventh Circuit, have criticized the SSA for continuing to rely on the DOT for estimates of available jobs in the national economy. The Seventh Circuit recently observed that the DOT "was last

revised thirty years ago, leaving many of its job descriptions outdated." *Ruenger v. Kijakazi*, 23 F.4th 760, 761–62 (7th Cir. 2022). In addition, as the Eleventh Circuit recently noted, "[a]side from being three decades old, the DOT presents other difficulties." *Goode*, 966 F.3d at 1281. Namely, the DOT does not provide statistical information for its job codes; instead, VEs must imperfectly cross-reference the codes with other occupational data sources. *Id.*; *Ruenger*, 23 F.4th at 762; *Chavez*, 895 F.3d at 965.

The SSA has been working on a transition to a new Occupational Information System since 2008, with an originally anticipated completion date of 2020. *See Chavez*, 895 F.3d at 965*; Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020); *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018). However, the date has slipped, and the transition has not yet occurred. *See* Soc. Sec. Admin., *Occupational Information System Project*, https://www.ssa.gov/disabilityresearch/occ upational_info_systems.html (last visited July 1, 2022). We join our sister circuits in encouraging the SSA to make the transition to a system that more accurately reflects available jobs in the current economy.

Despite the outdated DOT system upon which the SSA allows VEs to rely, we have characterized uncontradicted VE job-numbers testimony as "inherently reliable" and "ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford*, 950 F.3d at 1160 (first quoting *Buck*, 869 F.3d at 1051); *see also Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192–93 (9th Cir. 2022). However, a VE may "offer testimony that is so feeble, or contradicted, that it would fail to clear the substantial-evidence bar." *Biestek*, 139 S. Ct. at 1155–56. The substantial evidence inquiry for VE testimony must proceed on a "case-by-case" basis, taking

"into account all features of vocational expert's testimony, as well as the rest of the administrative record." *Id.* at 1157.

## B. Presentation of New Evidence to the Appeals Council

Social security disability claimants must raise challenges to the accuracy of a VE's job-number estimates "at some point during administrative proceedings to preserve the challenge on appeal in federal district court." *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017); *see also Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that a claimant's failure to raise an issue "at both her hearing before the ALJ and the Appeals Council" constitutes forfeiture). The Appeals Council is the final level of SSA's administrative review. The SSA's decision is not final until the Appeals Council denies a request for review, or, if it accepts a case for review, until it issues its own findings. *See* 20 C.F.R. §§ 404.955, 404.981; *see also Bass v. Soc. Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989) (per curiam).

SSA regulations permit a claimant to submit additional evidence to the Appeals Council if the claimant shows good cause for not having submitted it earlier. 20 C.F.R. § 404.970(b); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162–63 (9th Cir. 2012) (holding that evidence submitted for the first time to the Appeals Council becomes part of the administrative record for the purposes of judicial review). When good cause is shown, regulations provide that the Appeals Council will review a case based on additional evidence submitted to the Council for the first time if the evidence is "material," it relates to a time period on or before the ALJ's decision, and "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

## C. *Buck v. Berryhill*

In *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017), the VE and the claimant introduced evidence of strikingly different estimates for the same jobs. The VE testified that the claimant, Gavin L. Buck, could work in several different jobs, including bottling-line attendant, bottle packer, and conveyor-belt maker. *Id.* at 1047. The VE estimated that there were 600,000 bottling-line attendant jobs, 8,800 bottle-packer jobs, and 235,000 conveyor-belt maker jobs in the national economy. *Id.* Using the same software program as the VE, Buck's attorneys estimated that there were, in fact, only 231 bottling-line attendant jobs, 2,039 bottle-packer jobs, and 26 conveyor-belt maker jobs nationally. *Id.* The ALJ curtailed Buck's cross-examination of the VE at the hearing, but assured Buck that he could submit his objections post-hearing. *Id.* Without addressing Buck's post-hearing submission, the ALJ denied disability benefits. *Id.* The ALJ found at step five that Buck could work in the jobs to which the VE had testified, and that those jobs were present in significant numbers in the national economy. *Id.* The Appeals Council denied Buck's request for review. *Id.* at 1048. The district court granted summary judgment to the Commissioner. *Id.*

We reversed, holding that "the vast discrepancy between the VE's job numbers and those tendered by Buck, presumably from the same source, is simply too striking to be ignored." *Id.* at 1052. We explained that in failing to address that discrepancy, the ALJ had violated the general duty to clarify and develop the record. *Id.* We concluded, "This inconsistency in the record must be addressed by the ALJ on remand." *Id.* We recently applied *Buck* and held that an ALJ need only resolve job-number inconsistencies if the

"competing job numbers . . . constitute significant probative evidence." *Kilpatrick*, 35 F.4th at 1194. We consider whether there is "support for [a claimant's] counsel's approach" in generating job-number estimates in determining whether new evidence is significant and probative. *Id.*

### D. Obligation of the Agency in this Case

In the case before us, the Appeals Council wrote that it had "consider[ed] the reasons" submitted by White in connection with his request for review, and that it had made White's additional evidence "part of the record." However, the Appeals Council declined to remand White's case to the ALJ for further consideration of this evidence.

A disability claimant has the right to submit evidence to the Appeals Council that was not submitted to the ALJ, provided there is "good cause" for not having submitted the evidence earlier. 20 C.F.R. § 404.970(b). We interpret the statement in the Appeals Council's Order that it had "consider[ed]" White's reasons and had made his additional evidence "part of the record" as indicating that White had shown "good cause" under § 404.970(b) in not having introduced it in the hearing before the ALJ. We have previously recognized that "a claimant will rarely, if ever, be in a position to anticipate the particular occupations a VE might list and the corresponding job numbers to which a VE might testify at a hearing." *Shaibi*, 883 F.3d at 1110.

If the Appeals Council had credited White's estimates that there were only a total of 4,290 jobs (counting all three jobs) in the national economy that he could perform, there is a reasonable probability that the outcome of his proceeding may have been different. *See Gutierrez v. Comm'r of Soc.*

*Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (holding that 25,000 jobs nationally is a significant number, but noting that it was a "close call"); *see also Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (holding that 1,680 jobs nationally was not significant). Furthermore, White's conflicting evidence was "significant" and "probative." *Kilpatrick*, 35 F.4th at 1193. White's evidence was produced using a data source and methodology frequently relied on by the SSA. *Id.* at 1194; *see also Purdy*, 887 F.3d at 14 ("SkillTRAN's software has been recognized . . . to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy."); *Chavez*, 895 F.3d at 966–67, 970–71 (holding that an ALJ's decision was not supported by substantial evidence where the ALJ failed to address discrepancy between job estimates obtained via the equal distribution method and job numbers obtained from Job Browser Pro). Indeed, according to White, his job estimates were produced using the same methodology as that used by the VE.

In sum, White's job estimates differed substantially from those of the VE. White estimated—using SkillTRAN Job Browser Pro and the same DOT codes the VE had used—that there were 2,957 table worker, 0 assembler, and 1,333 film touch-up inspector jobs in the national economy. The VE had testified that there were 72,000, 65,000, and 32,000 jobs, respectively, in these same occupations. The discrepancy between these estimates is comparable to the discrepancy in *Buck*. *See* 869 F.3d at 1047.

We recognize that the claimant in *Buck* submitted his estimated job numbers to the ALJ, and that White submitted his estimated job numbers to the Appeals Council. This distinction is not fatal. Under SSA regulations, a claimant

has a right to submit additional evidence to the Appeals Council, which the agency may choose to make part of the administrative record where it finds that certain conditions are met, as it appears to have done here. *See* 20 C.F.R. § 404.970(b). Applying *Buck*, we hold that remand is appropriate to allow the ALJ to address the evidence and to resolve the inconsistency between the job-number estimates provided by White and by the VE.

## Conclusion

The evidence White submitted to the Appeals Council created an inconsistency in the record that the agency had an obligation under *Buck* to address and resolve. We reverse the decision of the district court with directions that the case be remanded to the agency for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**