NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 28 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AZIZEH RASHIDI,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.    22-55121

D.C. No. 3:20-cv-02016-MDD

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Mitchell D. Dembin, Magistrate Judge, Presiding

Argued and Submitted December 5, 2022
Pasadena, California

Before:  BERZON, R. NELSON, and BADE, Circuit Judges.

Azizeh Rashidi appeals the district court's affirmance of the Commissioner

of Social Security's partial denial of her application for supplemental security

income. This Court reviews the district court's decision de novo and, absent legal

error, we will set aside the agency's denial of benefits only if the decision was not

supported by substantial evidence. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

2017). We affirm.

1. The Administrative Law Judge ("ALJ") did not err under our precedents when he concluded that the Vocational Expert's ("VE") testimony was reliable and constituted substantial evidence to support a finding that significant numbers of jobs in the national economy were available to Rashidi.

"Due to their specialized knowledge, the [Social Security Administration] recognizes VEs as 'reliable sources of occupational information in the evaluation of disability claims.'" *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022) (quoting Social Security Ruling, SSR 00-4p, 65 Fed. Reg. 75760 (2000)). "[E]ven without significant testing, a factfinder may conclude that [VE] testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

Rashidi argues that the VE's testimony was insufficient because, when Rashidi's counsel asked her on cross-examination to explain how she estimated job numbers, the VE was unable to identify a reliable methodology. For example, the VE was unable clearly to list the names of the sources for the numbers she cited; she just referred to the "DOT" (the *Dictionary of Occupational Titles*), the "US Bureau of Labor Statistics," and "*Occupational Employment Quarterly*" as sources she generally used. As to her methodology for calculating the numbers, the VE's answers were vague and not substantive. She stated that "we . . . refer to" these

publications, "do [a] validation of statistics of physical limitations," "draw the interpretations," and "basically figure out where the numbers come from and estimate all that and figure out where and how the three can conclude." This description provides little information as to the specific methods used to derive the job number estimates to which she testified.

This Court has held, however, that, absent contrary evidence, a VE's testimony is "'inherently reliable'" and "sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020) (quoting *Buck*, 869 F.3d at 1051). *Ford* upheld a VE's testimony even though the expert could not identify the specific sources of the job number estimates he gave and could only list sources that he generally used, briefly explaining that he "typically average[d]" his sources once a year. *Id.* at 1152–53, 1159–60. Thus, though an "applicant may probe the strength of testimony by asking an expert about (for example) her sources and methods" to assess whether the testimony is "feeble" or "contradicted," *Biestek*, 139 S. Ct. at 1155–56, under *Ford*, the cursory nature of the VE's explanation of her methodology, alone, did not render her testimony unreliable.

At the same time, "VE testimony is not incontestable." *Buck*, 869 F.3d at 1051. For example, a claimant may challenge a VE's qualifications or trustworthiness. *See Ford*, 950 F.3d at 1159. But Rashidi does not challenge the

VE's testimony on these grounds. "Our review of an ALJ's fact-finding for substantial evidence is deferential, and '[t]he threshold for such evidentiary sufficiency is not high.'" *Id.* (alteration in original) (quoting *Biestek*, 139 S. Ct. at 1154). The ALJ expressly overruled Rashidi's objection to the VE's testimony, based on the VE's "professional knowledge and experience," and after "determin[ing] that the vocational expert's testimony [wa]s consistent with the information contained in the Dictionary of Occupational Titles." The ALJ did not err in concluding that the VE's testimony was reliable.

2. *Ford* recognizes that a VE's otherwise qualified and trustworthy testimony can be challenged if contradicted by evidence in the record. 950 F.3d at 1159. When an ALJ is confronted with conflicting evidence from the VE and the claimant regarding the number of jobs available to the claimant, the ALJ must address and resolve that conflict. *Buck*, 869 F.3d at 1051–52.

Rashidi submitted evidence alleged to contradict the VE's estimated numbers for the jobs the VE identified as available to Rashidi. However, "an ALJ need only resolve job-number inconsistencies if the 'competing job numbers . . . constitute significant probative evidence.'" *White v. Kijakazi*, 44 F.4th 828, 836 (9th Cir. 2022) (quoting *Kilpatrick*, 35 F.4th at 1194). The ALJ did not err when he overruled Rashidi's objections to the VE's testimony without expressly addressing Rashidi's rebuttal evidence, because the evidence was not significant or probative.

4

Rashidi sought to contradict the VE's job-numbers testimony through a post-hearing brief arguing that rebuttal evidence established that the number of jobs available to Rashidi is far fewer than the VE represented.[1] To support her assertions, Rashidi submitted nearly 500 pages of data, most of which appear to be from a source called "Occu Collect." The pages cite to government publications, including some from the Bureau of Labor Statistics, but the citations are generic, and the pages provide no explanation for how Occu Collect's information is derived from those publications.

Rashidi stated in her post-hearing brief to the ALJ and in her briefs before this Court that her conveyer bakery worker and iron zipper job numbers were obtained using Job Browser Pro, a source that has been recognized as a reliable source of job-number estimates.[2] But the pages on which that information is found in the evidence Rashidi submitted do not provide any indication that they were generated by Job Browser Pro. The pages also do not explain where the specific estimated numbers come from, how they were derived, or by whom. For example,

---

[1] Rashidi also argued, and the Commissioner concedes, that the VE erroneously testified that shipping-and-receiving weigher was a job available to Rashidi. However, if the rest of the VE's testimony is reliable, that error was harmless. The VE's testimony regarding the numbers of conveyor bakery worker and iron zipper jobs still would constitute a significant amount of work in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014).

[2] Job Browser Pro is a software widely used by VEs that collects and analyzes Bureau of Labor Statistics data. *See White*, 44 F.4th at 831–33; *see also, e.g.*, *Purdy v. Berryhill*, 887 F.3d 7, 14–17 (1st Cir. 2018).

Rashidi asserts that, based on one page of the 500 submitted, for which she did not provide a pincite in her post-hearing brief, only 428 conveyor bakery worker jobs exist in the United States. But she provided no evidence explaining what the low estimate that appears on that page signifies—for example, the number of total jobs nationwide, or the number of vacant jobs available.

Because Rashidi's rebuttal evidence did not constitute significant probative evidence, the ALJ was not obliged expressly to consider and resolve the conflicting job-numbers evidence.

**AFFIRMED.**